896 F.Supp. 1339 (1995)
UNITED STATES of America, Plaintiff,
v.
INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, AFL-CIO, et al., Defendants.
In re Government's Application to Enjoin Plaintiffs in Darrow v. International Brotherhood of Teamsters, 94 Civ. 02113 (D.D.C.) (RJ), From Prosecuting That Case in Any Court or Forum Other Than This Court.
No. 88 Civ. 4486 (DNE).
United States District Court, S.D. New York.
August 18, 1995.
*1340 Mary Jo White, United States Attorney for the Southern District of New York (Karen B. Konigsberg, Assistant United States Attorney, of counsel), for the U.S.
Baptiste & Wilder, P.C., Washington, DC (Robert M. Baptiste, Patrick J. Szymanski, of counsel), Shapiro, Beilly, Rosenberg, Albert & Fox, New York City, (Barry I. Levy, of counsel), for Darrow plaintiffs.
Cohen, Weiss and Simon, New York City (Richard M. Seltzer, Nathaniel K. Charney, of counsel), International Brotherhood of Teamsters Legal Department, Washington, DC (Judith A. Scott, Earl V. Brown, Jr., of counsel), for defendant International Broth. of Teamsters.

OPINION & ORDER
EDELSTEIN, District Judge:
This opinion emanates from the voluntary settlement of an action commenced by United States of America against the International Brotherhood of Teamsters ("the IBT" or "the Union") and the IBT's General Executive Board. This settlement was embodied in the voluntary consent order entered March 14, 1989 ("the Consent Decree"). The goal of the Consent Decree is to rid the IBT of the hideous influence of organized crime through a two-phased implementation of the Consent Decree's various remedial provisions. In the first phase of the Consent Decree, these provisions provided for three court-appointed officers: the Independent Administrator to oversee the Consent Decree's provisions, the Investigations Officer to bring charges against corrupt IBT members, and the Election Officer to supervise the electoral process that led up to and included the 1991 election for International Union Office. In the second phase of the Consent Decree, the Independent Administrator was replaced by a three-member Independent Review Board ("the IRB"). Further, paragraph 12(D)(ix) of the Consent Decree provides that "the union defendants consent to [an] Election Officer, at Government expense, to supervise the 1996 IBT Elections."
During its six-year history, the Consent Decree has spawned a tremendous amount of litigation that has required this Court to issue numerous opinions. In one of those opinions, pursuant to this Court's authority under the All Writs Act, 28 U.S.C. § 1651(a), this Court enjoined all "local unions, joint councils, area conferences, and other entities affiliated with the IBT ... from filing or taking any legal action that challenges, impedes, seeks review of or relief from, or seeks to prevent or delay any act of any of the court officers appointed ... pursuant to the Consent [Decree] in this action, in any court or forum in any jurisdiction except this Court." January 17, 1990, Opinion & Order, 728 F.Supp. 1032, 1038 n. 5 (S.D.N.Y.) ("All Writs Act Decision"), modification denied, 735 F.Supp. 502 (S.D.N.Y.), aff'd, 907 F.2d 277 (2d Cir.1990).
In the instant motion, brought pursuant to this Court's All Writs Act Decision, the Government seeks to enjoin plaintiffs in Darrow v. International Brotherhood of Teamsters, 94 Civ. 02113, 94 Civ. 02113 (D.D.C.) (RJ) ("Darrow"), which is an action filed in the United States District Court for the District of Columbia, from pursuing that action in any court or forum in any jurisdiction except this Court.

BACKGROUND
The Darrow plaintiffs are seven individual members of the IBT, seven IBT Joint Councils, and one IBT-affiliated body. (See Darrow v. International Bhd. of Teamsters (D.D.C.) (RJ), Amended Complaint ¶¶ 4-18.) Each of the seven individual plaintiffs is an officer of a Joint Council that has voted to participate in, and make contributions to, either The Real Teamsters Caucus ("the *1341 Caucus") or The Teamster Affiliates Defense and Education Fund ("the Defense Fund"). Three of these individual plaintiffs are officers of either the Caucus or the Defense Fund. The seven IBT Joint Councils that are plaintiffs in this action have voted to participate in, and make contributions to, the Caucus and the Defense Fund. The one IBT-affiliated plaintiff "is considering whether to participate in and make contributions to the Caucus and the Defense Fund." Id. ¶ 18. The Darrow defendants are the IBT, IBT General President Ron Carey ("Carey"), IBT General Secretary-Treasurer Tom Sever ("Sever"), and IBT International Vice President Tom Gilmartin ("Gilmartin"). See id. ¶¶ 19-22.
The Darrow plaintiffs claim that the Caucus and the Defense Fund are two voluntary organizations that IBT members recently created to address problems within the IBT. (See Plaintiffs' Memorandum of Law in Opposition to Government's Motion for Injunctive Relief at 6-7.) The Darrow plaintiffs assert that IBT members "are upset with the failure of the International Union to call a special convention that would allow delegates from every affiliate to meet, discuss, debate and adopt appropriate reforms to deal with the Union's serious financial problems." Id. at 6. The Darrow plaintiffs also contend that these IBT members are "equally upset by the International Union's failure to take any meaningful action to limit expenses." Id. Moreover, the Darrow plaintiffs claim that various IBT policies "have made it increasingly difficult for local unions and other affiliates to operate, to organize new members and to negotiate good contracts." Id.
The Darrow plaintiffs assert that thirty-three IBT members and officers met in Chicago in June 1994 to discuss these problems. See id. at 7. The Darrow plaintiffs state that these IBT members and officers "met, discussed, debated and adopted resolutions and bylaws forming two voluntary organizations  the Real Teamsters Caucus and The Teamster Affiliates Defense and Education Fund." Id. The Darrow plaintiffs claim that "[t]he purpose of the Caucus is to provide members and officers with information on what is going on in the Union and with a forum in which they can meet and discuss the Union's problems and recommend mutual action to rebuild the Union and its treasury." Id. The Darrow plaintiffs assert that "[t]he purpose of the Defense ... Fund is to support specific educational projects to inform members, officers and affiliates about their rights and to support proceedings and activities to protect and enforce those rights." Id.
The Darrow plaintiffs contend that the Darrow defendants improperly have sought to eliminate the Caucus and the Defense Fund. The Darrow plaintiffs assert that "almost from the very beginning, the International Union and the other defendants threatened disciplinary and other action against the members and officers who participated in the Caucus and the Defense Fund." Id. at 9. The Darrow plaintiffs claim that the Darrow defendants discussed eliminating the Caucus and the Defense Fund during a meeting of IBT International officers. See id. at 10. The Darrow plaintiffs assert that defendant Carey sent two electronic-mail messages to all IBT affiliates that warned IBT members that the Caucus and the Defense Fund may be violating the IBT Constitution. See id. The Darrow plaintiffs allege that the IBT also sent an electronic-mail message to IBT members that warned that "officers who use members' dues money to fund [the Caucus or the Defense Fund] despite this information may expose themselves to liability under federal law and/or internal union discipline." Id. at 14.
The Darrow plaintiffs claim that "[t]he effect of this series of threats prompted a number of the members, officers and joint councils ... to file the Darrow action" in the United States District Court for the District of Columbia. Id. at 14. In that action, the Darrow plaintiffs allege that the Darrow defendants violated Title I of the Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 411(a)(2), "by threatening to take punitive action against IBT members, officers and affiliates who voice their disagreement with and dissent from policies and programs pursued by the International Union, General President Ron Carey and his loyalists, including defendants Sever and Gilmartin." (See Darrow v. IBT, *1342 94 Civ. 02113 (D.D.C.) (RJ), Amended Complaint ¶ 54.) In their prayer for relief, the Darrow plaintiffs request:
[t]hat the Court issue a permanent injunction prohibiting defendants, their officers, employees and agents and any person acting in concert with them from threatening, restraining, coercing, using any Union resources or taking any other action against plaintiffs or any other IBT members, officers or affiliates because they participate in or authorize any contributions to the Caucus or the Defense Fund.
Id. 23-24.
The Darrow plaintiffs also seek a declaratory judgment under Section 401(g) of the LMRDA, 29 U.S.C. § 481(g), which provides: "No moneys received by any labor organization by way of dues, assessment, or similar levy ... shall be contributed or applied to promote the candidacy of any person in an [internal union] election...." Id. ¶ 58 (quoting 29 U.S.C. § 481(g)). The Darrow plaintiffs claim that the Darrow defendants have, in effect, accused plaintiffs of violating Section 401(g) of the LMRDA, and plaintiffs seek a declaratory judgment stating that they have not violated this statute.
In their Answer to the Darrow plaintiffs' Amended Complaint, the Darrow defendants deny plaintiffs' claims on every major point. The Darrow defendants' Answer also cites to a memorandum that defendants assert was prepared for the "Caucus and/or the Defense Fund" by Delacorte & Shinoff, which is a public relations firm ("the Shinoff memorandum"). (See Darrow v. IBT, 94 Civ. 02113 (D.D.C.) (RJ), Answer ¶ 50.) The Darrow Defendants contend that the Shinoff memorandum describes "a strategy to create a national caucus to become a `shadow government' and `national campaign committee' following a revocation of the charters of the former IBT Area Conferences." Id. The Darrow defendants claim that "[t]he Shinoff Memo is evidence that the Caucus and the Defense Fund were created for the purpose of promoting candidates for union office in violation of Section 401(g) of the LMRDA, 29 U.S.C. § 481(g), Section 501(a) of the LMRDA, 29 U.S.C. § 501(a) and the IBT Constitution." Id.
After the Darrow plaintiffs brought suit in the United States District Court for the District of Columbia, the Darrow defendants moved to transfer venue to this Court, arguing that this Court is the exclusive venue "for proceedings like this implicating the Consent Decree between the IBT and the U.S. Government." (Darrow v. IBT, 94 Civ. 02113 (D.D.C.) (RJ), Memorandum of Points and Authorities in Support of Defendants' Motion to Transfer Venue at 2.) The Darrow plaintiffs filed a brief in opposition to the Darrow defendants' motion.
Thereafter, the Government wrote a letter to the Honorable Norma Holloway Johnson ("Judge Johnson"), the district judge hearing the Darrow litigation. In this letter, the Government states that "because the Darrow litigation necessarily implicates the enforcement of the Consent Decree entered in the United States v. IBT case, the Government will shortly be filing an application in the Southern District of New York ... seeking to enjoin the Darrow proceedings from being litigated in any forum other than the Southern District." Letter from Christine H. Chung, Assistant United States Attorney, to Hon. Norma Holloway Johnson, at 1 (December 1, 1994). After the Government submitted this letter to Judge Johnson, the Darrow plaintiffs moved to stay the proceedings in the District of Columbia, pending this Court's decision of the Government's forthcoming motion to enjoin the Darrow plaintiffs. (See Darrow v. IBT, 94 Civ. 02113 (D.D.C.) (RJ), Plaintiffs' Motion to Stay Proceedings Pending Disposition of the Consent Decree Application in the United States District Court for the Southern District of New York.) By Order dated February 7, 1995, the District of Columbia court stayed the Darrow proceedings. See February 7, 1995, Order, Darrow v. IBT, 94 Civ. 02113, 1995 WL 631857 (D.D.C.) (RJ).
Thereafter, the Government brought the instant application, seeking to enjoin the Darrow plaintiffs from bringing the Darrow litigation in any court or forum in any jurisdiction except this Court. The Government asserts that this application is based on this Court's All Writs Act Decision. The Darrow plaintiffs filed a memorandum in opposition *1343 to the Government's motion. The Darrow defendants, however, have not filed any papers in response to this motion.

DISCUSSION
This Court retains exclusive jurisdiction over matters arising under the Consent Decree. See Consent Decree, ¶¶ A.1, K.16. In aid of this Court's jurisdiction, this Court issued the All Writs Act Decision, which enjoins any IBT affiliate from bringing any action in another court that "challenges, impedes, seeks review of or relief from, or seeks to prevent or delay any act of any of the court officers appointed by this Court pursuant to the Consent [Decree]." January 17, 1990, Opinion & Order, 728 F.Supp. at 1038 n. 5. In the All Writs Act Decision, this Court cited three reasons why such actions must be brought before this Court. "First, there exists a significant risk of subjecting the Consent Decree to inconsistent interpretations and the Court Officers to inconsistent judgments." Id. at 1047. Such inconsistent interpretations of the Consent Decree "would encourage forum shopping by subordinate entities seeking a sympathetic ruling." Id. Second, "widespread litigation across the country would subvert the reform by bogging the Court officers down in duplicative, harassing, and perhaps frivolous litigation." Id. "Third, judicial economy demands that similar issues not be litigated multiple times in different districts...." Id. at 1048.
The Government claims that the Darrow litigation implicates the Consent Decree in three ways. First, the Government asserts that the injunctive relief that the Darrow plaintiffs seek will impede the functioning of the IRB. (See Memorandum of Law in Support of Government's Motion for Injunctive Relief at 3.) Second, the Government argues that the Darrow litigation "seeks an advance ruling from another court concerning matters within the jurisdiction of the Election Officer." Id. at 4. Third, the Government contends that the Darrow litigation could have a profound effect on the Consent Decree because the Darrow defendants argue that the Caucus and the Defense Fund may be intended to constitute a "`shadow government' that would be beyond the reach of the IBT Constitution, the Consent Decree and the jurisdiction of this Court." Id. The Darrow plaintiffs contest each of the Government's claims. Each of these claims is examined in turn.

1. Effect of Relief Sought by Darrow Plaintiffs on Functioning of the IRB
The Government contends that this Court should enjoin the Darrow plaintiffs from proceeding in the District of Columbia because "[t]he injunction requested by the Darrow plaintiffs, if granted, would interfere with the authority and actions of the IRB." Id. at 12. The Government notes that the Consent Decree empowers the IRB "to investigate allegations of corruption in the IBT, including, inter alia, bribery, extortion, embezzlement, acts of racketeering and conduct that brings reproach upon the union." Id. (citing Consent Decree ¶ G.(a)). Pursuant to the IRB Rules, after the IRB completes an investigation, the IRB prepares an investigation report and submits this report to "the appropriate IBT entity, the General President, the General Executive Board, and the IBT Ethical Practices Committee." Id. (citing IRB Rules I.1, I.4, reprinted in August 19, 1992, Opinion & Order, 803 F.Supp. 761, 803 (S.D.N.Y.1992), aff'd in part, rev'd in part, 998 F.2d 1101 (2d Cir.1993)). After receiving the investigation report, the appropriate IBT entity must "resolve the referred matter in a manner acceptable to the IRB." Id. (citing IRB Rules ¶ I.5, reprinted in August 19, 1992, Opinion & Order, 803 F.Supp. at 803). Thus, the Government asserts that "the IRB Rules require the IRB to attempt to effect [sic] its disciplinary or trusteeship recommendations through the actions of the IBT." Id. at 12-13.
The Government asserts that the injunction that the Darrow plaintiffs seek will interfere with the functioning of the IRB. The Government notes that the Darrow plaintiffs have sought a permanent injunction prohibiting the Darrow defendants from "taking any ... action against plaintiffs or any other IBT members, officers or affiliates because they participate in or authorize any contributions to the Caucus or the Defense Fund." Id. at *1344 13 (quoting Darrow v. IBT, 94 Civ. 02113 (D.D.C.) (RJ), Amended Complaint at 23-24). The Government argues that the relief that the Darrow plaintiffs request "would prevent the IBT or General President Carey from acting upon disciplinary or trusteeship recommendations of the IRB if those recommendations arose out of participation in or contributions to the Caucus or the Defense Fund." Id.
The Darrow plaintiffs do not contest the Government's claim. Rather, they argue that, despite the fact that they seek an injunction that would prevent the IBT and General President Carey from acting in the way that the Government has described, the IRB would, nonetheless, retain the authority to bring disciplinary proceedings without referring an investigation report to the IBT. (See Plaintiffs' Memorandum of Law in Opposition to Government's Motion for Injunctive Relief at 23.) The Darrow plaintiffs contend that "the IRB has full authority to conduct its own independent hearings" and that "[t]his procedure has been followed by the IRB in circumstances where there might be some conflict of interest or the appearance of such a conflict if the IBT or its officers acted on the particular matter at issue." Id. Moreover, the Darrow plaintiffs argue that in view of the threats that they have received from IBT officers, an apparent conflict would exist if the IBT or its officers acted on any case involving the Caucus or the Defense Fund. See id. at 23-24.
This Court finds that the Darrow plaintiffs must be enjoined from pursuing the Darrow litigation in any court or forum other than this Court because the injunctive relief that plaintiffs seek will challenge and impede the functioning of the IRB. This Court's All Writs Act Decision prevents any IBT member from bringing in any court or forum other than this Court any action that "challenges, impedes, seeks review of or relief from, or seeks to prevent or delay any act of any of the court officers appointed by this Court pursuant to the Consent [Decree]." January 17, 1990, Opinion & Order, 728 F.Supp. at 1038 n. 5. As the Government has pointed out, the injunctive relief that the Darrow plaintiffs seek directly challenges the procedures that the Consent Decree and the IRB Rules have established for investigations and disciplinary actions undertaken by the IRB. The IRB Rules require the IRB to prepare an investigation report and to submit that report to "the appropriate IBT entity, the General President, the General Executive Board, and the IBT Ethical Practices Committee." IRB Rule I.4 (reprinted in August 19, 1992, Opinion & Order, 803 F.Supp. at 803). The IRB Rules contemplate that after an investigation report has been sent to the appropriate IBT entity, that IBT entity will resolve the referred matter. See IRB Rule I.4 (IRB may set number of days in which IBT must resolve a referred matter); IRB Rule I.5 ("the IBT entity to which a matter is referred shall promptly undertake whatever action is appropriate under the circumstances to resolve the referred matter"); IRB Rule 1.6 ("Within 90 days of the referral, the IBT entity to which a matter has been referred by the IRB shall file with the IRB written findings setting forth the specific actions taken and the reasons for that action.").
In the instant case, the Darrow plaintiffs seek a permanent injunction that would prohibit "defendants, their officers, employees and agents and any person acting in concert with them from threatening, restraining, coercing, using any Union resources or taking any other action against plaintiffs or any other IBT members, officers or affiliates because they participate in or authorize any contributions to the Caucus or the Defense Fund." (Darrow v. IBT, 94 Civ. 02113 (D.D.C.) (RJ), Amended Complaint at 23-24.) If the Darrow plaintiffs' requested injunction is granted and if, in the future, the IRB prepares an investigation report regarding any IBT member's participation in or contributions to the Caucus or the Defense Fund, the IBT would be precluded from performing its obligations under the IRB Rules. In that instance, the IBT could not "promptly undertake whatever action is appropriate under the circumstances to resolve the referred matter," IRB Rule I.5, because such action would abrogate the terms of the injunction that the Darrow plaintiffs seek. Thus, the injunction that the Darrow plaintiffs seek clearly challenges the actions of the IRB *1345 because it seeks to prevent the IRB and the IBT from following the procedures that this Court has established for handling investigations and discipline in the Union.
Further, the Darrow plaintiffs' argument that the IRB has the power to investigate and discipline members of the Caucus and the Defense Fund without referring an investigation report to the IBT is irrelevant. The issue of whether this Court should enjoin the Darrow plaintiffs from pursuing the Darrow litigation in another court turns on whether plaintiffs seek to challenge or impede "any act of any of the court officers appointed by this Court pursuant to the Consent [Decree]." January 17, 1990, Opinion & Order, 728 F.Supp. at 1038 n. 5. As discussed above, the Darrow plaintiffs seek to challenge the procedures established by the IRB Rules. The Darrow plaintiffs correctly assert that in cases in which the IBT's impartiality might be questioned, the IRB has pursued disciplinary proceedings without first referring a matter to the IBT. However, the Darrow plaintiffs fail to appreciate the fact that such actions are the exception, not the rule. In arguing that the IRB can and should proceed with any investigations against the Darrow plaintiffs using an extraordinary procedure that has only been used when the IBT has been recused, plaintiffs challenge the procedures that this Court has ruled should govern IRB investigations. By its very nature, this challenge places the Darrow litigation within the scope of this Court's jurisdiction under the All Writs Act Decision. Moreover, even if the Darrow plaintiffs are correct in their claim that the IBT should have no input in any investigations or disciplinary proceedings regarding any IBT member's connection with the Caucus or the Defense Fund, such a sweeping change in the IRB Rules should be litigated before this Court.
As previously stated, this Court found that its All Writs Act Decision was required for three reasons, and each of these reasons favors enjoining the Darrow plaintiffs. "First, there exists a significant risk of subjecting the Consent Decree to inconsistent interpretations and the Court Officers to inconsistent judgments." Id. at 1047. Clearly, the IRB would be subject to inconsistent judgments if the IRB Rules, which were approved by this Court, mandate a certain procedure for pursuing an investigation while an injunction from a sister federal court prohibits this procedure.
Second, "widespread litigation across the country would subvert the reform by bogging the Court Officers down in duplicative, harassing, and perhaps frivolous litigation." Id. If the Darrow plaintiffs receive the permanent injunction that they seek, the IRB officers may face repeated and prolonged litigation in the District of Columbia regarding this injunction. Moreover, given the vast amount of litigation the Consent Decree has spawned, the Darrow litigation raises the possibility that other IBT members may seek injunctions against the IBT leadership. Like the Darrow plaintiffs, these IBT members could claim that the IRB Rules should be altered to fit their individual cases.
Third, this Court's All Writs Act Decision was designed to promote judicial economy, and judicial economy is best served by enjoining the Darrow plaintiffs. The Darrow plaintiffs seek an injunction that would require the IRB to use extraordinary procedures when investigating members of the Caucus or the Defense Fund, and this Court should decide whether the requested injunction should issue. Because this Court has overseen the Consent Decree from its inception, this Court has a thorough knowledge of the myriad decisions that make up the law of this case. Therefore, interests of judicial economy militate in favor of having the Darrow plaintiffs pursue their injunction in this Court.

2. Effect of Relief Sought by Darrow Plaintiffs on Functioning of Election Officer
The Government contends that an injunction is also warranted in the instant case because the Darrow plaintiffs seek a declaratory judgment that "would encumber the deliberations of ... the Election Officer." (Memorandum of Law in Support of Government's Motion for Injunctive Relief at 14.) The Darrow plaintiffs have requested a declaratory *1346 judgment stating: "the use of labor organization funds to participate in and contribute to the Caucus and the Defense Fund do not violate Section 401(g) of the LMRDA, Section 501(a) of the LMRDA, or the IBT Constitution." (Darrow v. IBT, 94 Civ. 02113 (D.D.C.) (RJ), Amended Complaint at 23.)
The Government contends that the requested declaratory judgment will impede the functioning of the Election Officer because "the essential declaration [that the Darrow plaintiffs] are seeking  that the Caucus and the Defense Fund are not violating Section 401(g) of the LMRDA by making campaign contributions  involves factual and legal determinations that the Election Officer will be called upon to make in the course of supervising the 1995-96 IBT International election as it progresses." (Memorandum of Law in Support of Government's Motion for Injunctive Relief at 17.) The Government argues that, under the Consent Decree, the Election Officer "is charged with the `[c]omplete supervision of all facets of the election process.'" Id. at 14 (quoting January 10, 1990, Opinion & Order, 742 F.Supp. 94, 106 (S.D.N.Y.1990), aff'd as modified, United States v. International Bhd. of Teamsters, 931 F.2d 177 (2d Cir.1991)). The Election Officer bears the responsibility of seeing to it that the 1996 elections conform with the Rules for the 1995-1996 IBT International Union Delegate and Officer Election ("the Election Rules"). The Government contends that, because the Election Rules incorporate provisions of the IBT Constitution and the LMRDA, the declaratory judgment that the Darrow plaintiffs seek necessarily involves factual and legal determinations that the Election Officer may be called upon to make during the course of the 1996 elections. Specifically, the Government points to the fact that the Darrow plaintiffs seek a declaration that the contributions to the Caucus and the Defense Fund do not violate Section 401(g) of the LMRDA, which prohibits the contribution or application of a labor organization's dues to promote the candidacy of any person in a union election. (See Memorandum of Law in Support of Government's Motion for Injunctive Relief at 17.) The Government asserts that because Article XIII of the Election Rules specifically incorporates Section 401(g), the Election Officer is responsible for determining if the Caucus or the Defense fund is using IBT membership dues to promote the candidacy of a person in the 1996 elections.
The Government further contends that the Darrow plaintiffs should be enjoined from pursuing the Darrow litigation in the District Court for the District of Columbia even if a decision by that court would not be binding on the Election Officer. See id. at 18. The Government asserts that "[t]he Second Circuit held that it is entirely appropriate for a court administering civil RICO remedies to enjoin a non-binding collateral proceeding." Id. (citing Local 1814, International Longshoremen's Ass'n, AFL-CIO v. New York Shipping Ass'n, Inc., 965 F.2d 1224, 1238-39 (2d Cir.), cert. denied, ___ U.S. ___, 113 S.Ct. 406, 121 L.Ed.2d 331 (1992)).
The Darrow plaintiffs contest the Government's argument on several grounds. First, the Darrow plaintiffs assert that an injunction is not warranted in the instant case because they are willing to stipulate to the fact that the Election Officer has jurisdiction over them. (See Memorandum of Law in Opposition to Government's Motion for Injunctive Relief at 25.) Second, the Darrow plaintiffs contend that the Government mischaracterizes the relief that the Darrow plaintiffs have requested in the litigation in the District of Columbia. See id. The Darrow plaintiffs assert that, contrary to the Government's argument, they have never sought to challenge the Election Officer's jurisdiction. See id. at 26-27. Third, the Darrow plaintiffs argue that the District of Columbia litigation should not be enjoined because the claims made by both the Darrow plaintiffs and the Darrow defendants are currently before the Election Officer as a result of protests filed by the respective parties. See id. at 27; see also Election Office Case No. P-058 (election protest raising claims of Darrow plaintiff Chuck Mack); Election Office Case No. P-032 (election protest raising claims of Darrow defendant Gilmartin); Election Office Case No. 074 (election protest filed by Paul Alan Levy, which involves *1347 claims that are raised by Darrow defendants).
This Court finds that the Darrow plaintiffs must be enjoined from pursuing the Darrow litigation in any Court or forum other than this Court because the declaratory relief that plaintiffs seek will impede the functioning of the Election Officer. As previously noted, this Court's All Writs Act Decision prevents any IBT member from bringing in any court or forum other than this Court any action that "impedes ... any act of any of the court officers appointed by this Court pursuant to the Consent [Decree]." Id. at 1038 n. 5.
In the instant case, the declaratory relief that the Darrow plaintiffs seek will interfere with the Election Officer's oversight of the 1996 Elections because plaintiffs ask a district court to rule on factual and legal issues that the Election Officer will also be called upon to decide. The Darrow plaintiffs seek a declaration stating that "the use of labor organization funds to participate in and contribute to the Caucus and the Defense Fund do not violate Section 401(g) of the LMRDA, Section 501(a) of the LMRDA, or the IBT Constitution." (Darrow v. IBT, 94 Civ. 02113 (D.D.C.) (RJ), Amended Complaint at 23.) Yet, the Election Officer has already been called upon to determine whether contributions to the Caucus and the Defense Fund violate Section 401(g) of the LMRDA and the IBT Constitution. Three election protests that have already been filed with the Election Officer raise these issues. The Election Officer bears the responsibility of determining whether the IBT Constitution has been violated because these election protests concern whether IBT members are improperly using the Caucus and the Defense Fund to influence the IBT elections and because the Election Officer is charged with the "[c]omplete supervision of all facets of the election process." July 10, 1990, Opinion & Order, 742 F.Supp. at 106. Moreover, the Election Officer must also decide whether LMRDA section 401(g) has been violated because Article XIII of the Election Rules incorporates this very section of the LMRDA.
Because the Darrow litigation seeks a determination of issues that the Election Officer must decide, the Darrow plaintiffs should be enjoined from bringing that action in any court or forum other than this Court. Because the Election Officer and the District Court for the District of Columbia have been called upon to rule on identical issues, a decision by the District of Columbia court in the Darrow litigation might subject "the Consent Decree to inconsistent interpretations and the [Election Officer] to inconsistent judgments." United States v. IBT, 728 F.Supp. at 1047. This Court issued the All Writs Act Decision to obviate exactly this type of problem. Moreover, this Court issued the All Writs Act Decision because of the concern that "widespread litigation across the country would subvert the reform by bogging the Court officers down in duplicative, harassing, and perhaps frivolous litigation." Id. If the Darrow plaintiffs obtain the declaratory judgment that they seek, the Election Officer may become embroiled in protracted litigation in the District of Columbia regarding this declaratory judgment. This Court's All Writs Act Decision was also designed to promote judicial economy, and judicial economy is best served by seeing to it that the Darrow litigation is brought in this Court, which is the Court that oversees the Election Officer's actions.
The Government has noted correctly that, even if a decision of the District Court for the District of Columbia is not binding on the Election Officer, the requirements for issuing an injunction pursuant to the All Writs Act have, nonetheless, been met. See Local 1814, 965 F.2d at 1238-39. In Local 1814, the Second Circuit ruled that, pursuant to the All Writs Act, a district court may enjoin a collateral proceeding even if that proceeding "would merit no deference by the district court." Id. at 1238. In reaching this decision, the Second Circuit recognized that a district court should have the flexibility to oversee the administration of a consent decree. In the instant case, an injunction is warranted because the Election Officer should be free from the possibility of even a non-binding court decision that might propagate misinterpretations of the Consent Decree and might embroil the Election Officer in litigation in another forum.
*1348 It is noteworthy that the Darrow plaintiffs do not merely seek a declaration that the Caucus and the Defense Fund have not violated the LMRDA and the IBT Constitution to date, but rather, they seek a forward-looking declaration that certain actions of the Caucus and the Defense Fund "do not violate" the LMRDA and the IBT Constitution. Thus, not only is the Election Officer currently deciding election protests that raise issues identical to those raised in the Darrow litigation, but if the requested declaration is issued, future election protests may also conflict with this declaration.
In addition, an injunction under the All Writs Act is appropriate in the instant case because the actions of the Darrow plaintiffs challenge this Court's jurisdiction. The All Writs Act empowers district courts to issue "all writs necessary or appropriate in aid of their respective jurisdictions." 28 U.S.C. § 1651(a). In the instant case, this Court retains jurisdiction over all matters pertaining to the administration of the Consent Decree. See Consent Decree, ¶¶ A.1, K.16. The declaratory judgment that the Darrow plaintiffs seek is a matter that pertains to the administration of the Consent Decree because it will require a court to decide issues that must also be decided by the Election Officer. By seeking to obtain this declaratory judgment in another jurisdiction, the Darrow plaintiffs have challenged this Court's jurisdiction over the administration of the Consent Decree. Therefore, the injunction that the Government requests in the instant case should issue.
Each of the arguments that the Darrow plaintiffs raise in opposition to the Government's motion is meritless. The Darrow plaintiffs assert: (1) they are willing to stipulate to the Election Officer's jurisdiction; (2) that they have not sought to challenge the Election Officer's jurisdiction; and (3) the Election Officer's jurisdiction has not been challenged because three election protests raise the same issues that have been raised in the Darrow litigation. The problem raised by the Darrow litigation is not, however, that it is a challenge to the Election Officer's jurisdiction. Rather, the problem is that the Darrow litigation may impede the functioning of the Election Officer. Although the Government and the Darrow plaintiffs agree that the Election Officer has jurisdiction to decide issues regarding the Caucus and the Defense Fund, the fact remains that the Darrow litigation may hinder the Election Officer's efforts by subjecting the Consent Decree to potentially conflicting interpretations and by subjecting the Election Officer to the possibility of extensive litigation in the District of Columbia.

3. Darrow Defendants' Claim that the Caucus and the Defense Fund May Be a Shadow Government
The Government contends that this Court should also enjoin the Darrow plaintiffs because the Darrow defendants have asserted that the Caucus and the Defense Fund may be a "`shadow government' beyond the oversight of the IBT Constitution, the Consent Decree and, ultimately, this Court." (Memorandum of Law in Support of Government's Motion for injunctive Relief, at 19-20.) The Government asserts that under the IBT Constitution, "the IBT, through its General President, General Secretary-Treasurer and the General Executive Board has the power to audit, supervise, discipline and charter subordinate entities." Id. at 20 (citing IBT Constitution Art. VII, § 7; Art X, § 10; Art. VI, § 2; Art. IX, § 1; Art. XIX, § 7; Art. IX, § 2). The Government claims that the Darrow defendants have argued that "the Caucus and/or Defense Fund may improperly evade the audit and other investigatory and supervisory powers of the IBT, because they are functionally the equivalent of subordinate bodies but formally are not subject to the dictates of the IBT Constitution." Id. at 20-21 (citations omitted).
The Government argues that the issue that the Darrow defendants raise implicates the Consent Decree for two reasons. First, this "Court's authority to administer the Decree with respect to subordinate bodies and IBT members derives from the International union's representation of the subordinate affiliates and collective membership." Id. at 21 (citing United States v. International Bhd. of Teamsters, 931 F.2d 177, 186-87 (2d Cir. 1991)). Second, "the powers of the ... officers *1349 [appointed pursuant to the Consent Decree] are direct delegations of the powers that the General President and the General Secretary exercise over the Teamsters membership by virtue of the union Constitution." Id. (citations omitted). The Government argues that if the Caucus and the Defense Fund are a shadow government, "this Court's ability to enforce the Decree would be ... obstructed." Id.
The Darrow plaintiffs argue that the Darrow defendants' claim that the Caucus and the Defense Fund are a shadow government does not justify issuing an injunction for two reasons: (1) this argument was raised as a defense in the Darrow litigation; (2) the Caucus and the Defense Fund are not a shadow government. (See Memorandum of Law in Opposition to Government's Motion for Injunctive Relief at 28-29.)
Because this Court has already ruled that the Darrow plaintiffs must be enjoined from pursuing the Darrow litigation in any court or forum other than this Court, this Court will not address the issue of whether the "shadow government" argument that the Darrow defendants have raised warrants issuing an injunction pursuant to the All Writs Act.

CONCLUSION
For all the foregoing reasons, the Government's motion is GRANTED.
Plaintiffs in Darrow v. International Brotherhood of Teamsters, 94 Civ. 02113 (D.D.C.) (RJ), are hereby enjoined from pursuing that action in any court or forum in any jurisdiction except this Court. Plaintiffs in Darrow v. International Brotherhood of Teamsters, 94 Civ. 02113 (D.D.C.) (RJ), are hereby ordered either to dismiss their action or to transfer their action to this Court.
SO ORDERED.