John L. POWERS, Plaintiff,

v.

INTERNATIONAL BROTHERHOOD OF TEAMSTERS, Ron Carey and Joseph Padellaro, Defendants.

Civ. No. 3:96cv616(JBA).

United States District Court,
D. Connecticut.

April 30, 1996.

Reconsideration Denied June 20, 1996.

Edward F. Hennessey, Brien P. Horan, John Wenning Steinmetz, Robinson & Cole, Hartford, CT, for plaintiff.

James L. Linsey, Richard A. Brook, Cohen, Weiss & Simon, New York City, Gregg D. Adler, Gould, Livingston, Adler & Pulda, Hartford, CT, for defendants.

### ORDER AND MEMORANDUM

ARTERTON, District Judge.

Plaintiff has moved for a temporary restraining order [DOC. 6] enjoining the defendants from suspending or expelling him from membership in the International Brotherhood of Teamsters ("IBT"), and a preliminary injunction [DOC. 7] compelling the defendants to rescind the emergency trusteeship imposed on Joint Counsel 64 and restore Joint Council 64's elected officers, and restraining the defendants from suspending or expelling the plaintiff from membership in the IBT.

An initial conference was held by the court on April 16, 1996 at which parties were directed to brief in greater detail whether a federal court has and should exercise jurisdiction to intervene in internal labor union proceedings and whether plaintiff could make a showing of irreparable harm sufficient to warrant injunctive relief without first requiring exhaustion of all internal union proce-

dures. Briefs were submitted by the parties and a second hearing was held on April 25, 1996.

In a letter dated April 19, 1996, which the clerk is herewith directed to docket, the United States Attorney for the Southern District of New York advised the court and the parties of the order issued by Judge Edelstein of the Southern District, pursuant to the All Writs Act, 28 U.S.C. § 1651, "prohibiting all IBT-affiliated entities from litigating issues relating to" a March 14, 1989 Consent Decree ("Consent Decree"), which settled the Government's civil RICO action against the IBT, in any court or forum other than the Southern District of New York. Judge Edelstein's Order can be found at 728 F.Supp. 1032 (S.D.N.Y.1990); the order was affirmed by the Second Circuit at 907 F.2d 277 (2d Cir.1990). The United States Attorney for the S.D.N.Y., which represents the United States in matters relating to the Consent Decree, contends that the issues which will be litigated in this case should be heard by Judge Edelstein, and wrote to advise the court that if the plaintiff does not voluntarily transfer the case to Judge Edelstein, or if the court does not *sua sponte* transfer the case to Judge Edelstein, the Government "intends to move before Judge Edelstein for an injunction pursuant to the All Writs Act, 28 U.S.C. § 1651, and the All Writs Order, enjoining the prosecution of the *Powers* litigation in any court or forum other than the Southern District of New York."

At the invitation of the court, Assistant United States Attorney, Beth E. Goldman, of the Office of the United States Attorney for the Southern District of New York, attended the April 25, 1996 hearing. She was heard with respect to the scope and implementation of the Consent Decree as it affects IBT elections and internal disciplinary hearings.

Judge Edelstein has summarized the relevant development of the Consent Decree in this way:

The goal of the Consent Decree is to rid the IBT of the hideous influence of organized crime through a two-phased implementation of the Consent Decree's various remedial provisions. In the first phase of the Consent Decree, these provisions provided for three court-appointed officers: the Independent Administrator to oversee the Consent Decree's provisions, the Investigations Officer to bring charges against corrupt IBT members, and the Election Officer to supervise the electoral process that led up to and included the 1991 election for International Union Office. In the second phase of the Consent Decree, the Independent Administrator was replaced by a three-member Independent Review Board ("the IRB"). Further, paragraph 12(D)(ix) of the Consent Decree provides that 'the union defendants consent to [an] Election Officer, at Government expense, to supervise the 1996 IBT Elections.'

*United States v. IBT, et al.,* 896 F.Supp. 1339, 1340 (S.D.N.Y.1995).

An additional relevant provision of the "Consent Decree" states, in part:

This Court shall retain jurisdiction to supervise the activities of the Administrator and to entertain any future applications by the Administrator or the parties. This Court shall have exclusive jurisdiction to decide any and all issues relating to the Administrator's actions or authority pursuant to this order.

Consent Decree, ¶ K.16.

In January 1990, Judge Edelstein found

... that [¶ K.16] vests this Court with exclusive jurisdiction to determine matters concerning the activities of all the Court Officers, as they are brought before this Court by the procedures spelled out in the Consent Decree. The parties to the Consent Decree plainly anticipated the very circumstances which the collateral lawsuits now highlight: Disputes relating to the implementation of the Consent Decree should be brought before a single tribunal—this Court. The parties intended that all judicial oversight of the Consent Decree be concentrated in one tribunal for efficiency and consistency.

*United States v. IBT, et al.,* 728 F.Supp. at 1044–1045.

Pursuant to the All Writs Act, 28 U.S.C. § 1651, Judge Edelstein issued the order that all disputes relating to the implementa-

tion of the Consent Decree shall be brought in his court, basing the order on three factors: "the significant risk of subjecting the Consent Decree to inconsistent interpretations and the Court Officers to inconsistent judgments," the possibility of "widespread litigation across the country ... bogging the Court Officers down in duplicative, harassing, and perhaps frivolous litigation," and "judicial economy."

■ In its letter to this Court, the Government articulates that the *Powers* litigation relates to implementation of the Consent Decree in two ways. First, the government contends, *Powers* implicates the authority of the Election Officer. Specifically, the government argues that the gravamen of Powers' complaint is that the disciplinary action brought by the IBT against him and the imposition of the emergency trusteeship of Joint Council 64 of which Powers was president were without merit and were motivated by the IBT leadership's desire to prevent Powers from participating in the 1996 IBT Elections.

Last year, Judge Edelstein enjoined a suit brought by union members in a district other than the S.D.N.Y., in part, because the relief sought would have impeded the functioning of the Election Officer. *United States v. IBT et al.*, 896 F.Supp. 1339, 1345–1348. The plaintiffs, IBT members and joint councils, sought a declaration that the contribution of labor organization funds to organizations of IBT members set up to address problems within the IBT does not violate either the IBT Constitution or Section 401(g) of the Labor–Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 481(g). The Court held that because the Election Officer is charged with the "complete supervision of all facets of the election process," *Id.*, at 1347, *quoting United States v. IBT et al.*, 742 F.Supp. 94, 106 (S.D.N.Y.1990), it bears responsibility for making the determination whether the use of the funds in question violated the IBT Constitution or the LMRDA, and that the action would impede on the Election Officer's authority.

The Government also references and attaches a very recent case from the District of Massachusetts, *Tusino v. IBT et al.*, 96–40056–NMG, Gorton, J., in which the court *sua sponte* transferred an action to the S.D.N.Y. on the grounds the action implicated the authority of the Election Officer "to oversee all aspects of the IBT elections in order to prevent any possibility of fraud, coercion, intimidation, harassment or threat in the election process and to ensure that IBT elections are fair, free, honest and open," *Id.*, at 4, citing *United States v. IBT*, 742 F.Supp. 94, 106 (S.D.N.Y.1990), *aff'd as modified*, 931 F.2d 177 (2d Cir.1991); *United States v. IBT*, 896 F.Supp. 1349 (S.D.N.Y. 1995). In *Tusino*, plaintiff, an IBT member, brought a federal action against the IBT alleging that disciplinary sanctions imposed on him by IBT General President Carey were motivated by plaintiff's support for the national campaign of rival Jimmy Hoffa, Jr.

In this action, the Complaint contains four counts. Count One alleges that the imposition of an emergency trusteeship on Joint Council 64 on November 28, 1995 violates Title III of the Landrum–Griffin Act, 29 U.S.C. §§ 461–466, and Article VI, Section 5 of the IBT Constitution. Plaintiff alleges that the emergency trusteeship "was imposed ... as a pretext for neutralizing and silencing plaintiff Powers' vocal opposition to the re-election of defendant Ron Carey." *Complaint,* ¶ 15.

Count Two alleges that internal disciplinary proceedings brought against the plaintiff are in violation of the IBT's duty of good faith and fair dealing. Again plaintiff alleges that the disciplinary proceedings "will be motivated by political considerations ... and will therefore be a sham procedure," and that if successful in removing plaintiff from the IBT, "defendants ... will have succeeded in neutralizing him and silencing him in the months immediately prior to the vote on defendant Carey's bid for re-election as IBT General President." *Id.*, ¶ 30.

Count Three alleges that the removal of plaintiff as president and principal officer of Joint Council 64, because plaintiff had been compensated for that position, was in violation of Conn.Gen.Stat. § 31–51q (employer is liable for the discipline or discharge of employee on account of employee's exercise of First Amendment rights).

Count Four alleges that defendants defamed the plaintiff by publishing and otherwise communicating the contents of the Notice of Trusteeship.

In addition, at the April 25, 1996 hearing, plaintiff requested an order from this Court delaying or enjoining an internal IBT disciplinary hearing regarding allegations against Powers scheduled for May 9, 1996 on the basis that the allegations are baseless and the hearing officers are biased by their relationship with current IBT President Carey.

Insofar as at the base of each of the counts is the allegation that defendants were motivated by a desire to stifle plaintiff's advocacy of a Carey rival and to preclude his participation in the 1996 elections, the action implicates the authority of the Election Officer and hence is subject to the Consent Decree and Judge Edelstein's Order.

The extent to which the plaintiff's claims relate to issues which are in the province of the Election Officer's authority was made clear at the April 25th hearing on plaintiff's motions for preliminary relief. Plaintiff argued that scheduled disciplinary hearings regarding charges filed against Mr. Powers should be enjoined, in part, because of their futility. The hearings will be futile, plaintiff alleges, because the panel will consist of members who are close and loyal to IBT President Carey, who have received favorable treatment or are employed by Carey, and who will thus deny plaintiff a fair hearing on account of his known opposition to Carey's re-election in the forthcoming IBT elections. In sum, for the very reasons the plaintiff urges the court to enjoin the scheduled disciplinary hearings, namely the allegations of political retaliation, the court is obligated to transfer the case to Judge Edelstein.

■ The Government also suggests that this litigation relates to implementation of the Consent Decree in that it seeks declaratory and injunctive relief which implicates the disciplinary mechanism established and overseen under the Consent Decree. Specifically, the government contends that the "attempt to block the imposition of any future discipline against him would prevent the disciplinary officers from taking action against

Powers when and if appropriate, and thus violates the All Writs Order." "Letter of United States Attorney, Southern District of New York, April 19, 1996," to be docketed forthwith.

Judge Edelstein granted the injunction in *United States v. IBT et al.*, 896 F.Supp. at 1343–1345, in part, because the relief sought by the plaintiffs, namely a permanent injunction that would prohibit the IBT from taking any action against the plaintiffs for participating in or contributing to the voluntary organizations of IBT members, would "challenge and impede the function of the [Independent Review Board]." Judge Edelstein explained the "procedures that the Consent Decree and the IRB Rules have established for investigations and disciplinary actions undertaken by the IRB," that would have been impeded by the action.

> The IRB Rules require the IRB to prepare an investigation report and to submit that report to 'the appropriate IBT entity, the General President, the General Executive Board, and the IBT Ethical Practices Committee.' ... The IRB Rules contemplate that after an investigation report has been sent ton the appropriate IBT entity, that IBT entity will resolve the referred matter.

*Id.*, at 1344.

The Court held,

> If the plaintiffs' requested injunction is granted and if, in the future, the IRB prepares an investigation report regarding any IBT member's participation in or contributions to [the organizations], the IBT would be precluded from performing its obligations under the IRB Rules.

*Id.*

Here, plaintiff seeks to enjoin defendants from holding a disciplinary hearing and expelling plaintiff from membership in the union. Were the injunction granted, and plaintiff's case was brought before the IRB, and a report issued, the appropriate IBT entity charged with resolution of the matter would be precluded from doing so by the injunction. This certainly suggests that this court's in-

junctive action would impede the procedures provided for in the Consent Decree.

For these reasons, a *sua sponte* transfer of the case to Judge Edelstein in the Southern District of New York is required.

IT SO ORDERED.