INTERNATIONAL BROTHERHOOD OF TEAMSTERS, and James Buck as Trustee of Local Union Number 745, affiliated with the International Brotherhood of Teamsters, Plaintiffs,

v.

LOCAL UNION 745, affiliated with, the International Brotherhood of Teamsters, T.C. Stone, Jr., Charles E. Rogers, Clarence Knowles, Forrest Tyson Johnson, Allen Standford, Michael Kline, and Gill Johnson, Defendants.

No. 96 Civ. 6328 (DNE).

United States District Court, S.D. New York.

Aug. 30, 1996.

*AMENDED OPINION AND ORDER* [1]

EDELSTEIN, District Judge:

This opinion emanates from the voluntary settlement of an action commenced by plaintiff United States of America ("the Government") against, *inter alia*, the International Brotherhood of Teamsters ("the IBT" or "the Union") and the IBT's General Executive Board. The settlement is embodied in the voluntary consent order entered March 14, 1989 ("Consent Decree"). The goal of the Consent Decree is to rid the IBT of the hideous influence of organized crime through a two-phased implementation of the Consent Decree's various remedial provisions. In the first phase of the Consent Decree, these provisions provided for three court-appointed officers: the Independent Administrator ("IA") to oversee the Consent Decree's provisions, the Investigations Officer to bring charges against corrupt IBT members, and the Election Officer to supervise the electoral process that led up to and included the 1991 election for IBT International Union Office. In the second phase of the Consent Decree, the IA was replaced by a three-member Independent Review Board ("IRB").

During its more than seven-year history, the Consent Decree has spawned a tremendous amount of litigation that has required this Court to issue numerous opinions. In one of those opinions, pursuant to this Court's authority under the All Writs Act, 28 U.S.C. § 1651(a), this Court enjoined "all local unions, joint councils, area conferences, and other entities subordinate to or affiliated with the IBT, and any members, officers, representatives, agents and employees of the IBT or any such IBT affiliated entity, from filing or taking any legal action that challenges, impedes, seeks review of or relief from, or seeks to prevent or delay any act of any of the court officers appointed by this Court pursuant to the Consent Order in this action, in any court or forum in any jurisdiction except this Court[.]" December 15, 1989, Order at 3; *see also United States v. International Bhd. of Teamsters [All Writs Act Decision]*, 728 F.Supp. 1032 (S.D.N.Y.), *modification denied*, 735 F.Supp. 502 (S.D.N.Y.), *aff'd*, 907 F.2d 277 (2d. Cir.1990).

Plaintiff IBT filed the instant action against defendants Local Union 745 of the IBT ("Local 745" or "the Local"), located in Dallas, Texas, and its Executive Board ("defendants"), as a related case to both *United States v. International Bhd. of Teamsters*, 88 Civ. 4486, and *International Bhd. of Teamsters v. Teamsters Local 745*, 95 Civ. 9766, another Consent Decree related litigation currently pending before this Court. (Verified Complaint, *International Bhd. of Teamsters v. Local Union 745*, 96 Civ. 6328 ("Verified Complaint"), at 2 (Aug. 21, 1996).) This action arises from defendants' refusal to abide by a trusteeship imposed upon Local 745 by the IBT pursuant to the terms of the IBT Constitution, the Consent Decree, and relevant provisions of the Labor Management Relations Act ("LMRA") and the Labor Management Reporting and Disclosure Act ("LMRDA"). *Id.* at 1–2. On August 21, 1996, the IBT moved this Court, pursuant to Federal Rule of Civil Procedure 65 ("Rule 65"), to enjoin defendants from interfering and refusing to cooperate with the IBT's imposition of trusteeship on Local 745. That same day, this Court entered a Temporary Restraining Order enjoining defendants from: (1) interfering and refusing to cooperate with the IBT's imposition of trusteeship on Local 745; and (2) from commencing or pursuing any legal action, other than defense of the instant action before this Court, that challenges or delays the imposition of the

---

**1.** This Amended Opinion & Order replaces the Opinion & Order in this case filed August 29, 1996.

trusteeship by the IBT on Local 745. (Temporary Restraining Order and Order to Show Cause, *International Bhd. of Teamsters v. Local Union 745*, 96 Civ. 6328 (Aug. 21, 1996) ("TRO").) This Court further ordered defendants to show cause why this Court should not grant plaintiff a preliminary injunction enjoining defendants from: (1) interfering and refusing to cooperate with the IBT's imposition of trusteeship on Local 745; and (2) from commencing or pursuing any legal action, other than defense of the instant action before this Court, that challenges or delays the imposition of the trusteeship by the IBT on Local 745. *Id.* This Court held oral argument regarding this matter on August 22, 1996, and ruled from the bench in favor of plaintiff IBT. Pursuant to Rule 65(d), this Opinion and Order sets forth the reasons this Court granted plaintiff's motion for a preliminary injunction.

### FACTS

This is an action to enforce an emergency trusteeship imposed by the IBT over Local 745 upon the recommendation of the IRB. Pursuant to the authority vested in the IRB by the IBT Constitution and the Consent Decree, the IRB investigated allegations of corruption and misconduct by Local 745 and its officers and Executive Board. (Verified Complaint at 9.) Following this investigation, the IRB issued an investigative report detailing evidence of wrongdoing at Local 745, such as financial malpractice, including the issuance of interest-free loans to Local 745 officers and business agents, nepotism and favoritism in work referrals, and serious conflicts of interest of Local 745 officers arising from ongoing private business dealings between these officers and Local 745 employers. *Id.* at 10–12; *see* (Independent Review Board, Trusteeship Recommendation Concerning Local 745 (Aug. 5, 1996) ("IRB Report").) The IRB forwarded the IRB Report to IBT General President Ron Carey ("Carey"), and recommended that he impose a trusteeship over the Local. (Verified Complaint at 9); (IRB Report at 47.)

On August 20, 1996, Carey imposed a temporary emergency trusteeship over the affairs of Local 745 effective August 21, 1996.

(Verified Complaint at 9.) By letter dated, August 20, 1996, Carey appointed James Buck ("Buck") as Trustee over the affairs of Local 745, pursuant to the powers vested in the General President by Article VI, Section 5 of the IBT Constitution. *Id.* at 10; IBT Const., Art. VI, § 5. Also on August 20, 1996, Carey issued a Notice to the officers and members of Local 745, stating that he was imposing a temporary emergency trusteeship over Local 745 and explaining the reasons for the trusteeship. (Verified Complaint at 10.)

On August 21, 1996, Buck appeared at the address of Local 745 to present his Certificate of Appointment and Notice of Trusteeship and to begin carrying out his duties as Trustee. *Id.* at 12. The Local 745 Executive Board refused to recognize the trusteeship or to cooperate with Buck, and prevented Buck from carrying out his duties as Trustee. *Id.* at 13. Defendants claimed that the IBT did not act in good faith or reasonably in imposing an emergency trusteeship over Local 745 without a prior hearing, and that the IBT therefore violated the IBT Constitution. (Local 745's Memorandum of Law in Support of Motion to Dismiss or Transfer and in Opposition to Application for Temporary Restraining Order, *International Bhd. of Teamsters v. Local Union 745*, 96 Civ. 6328 ("Local 745 Memo"), at 12–15 (Aug. 22, 1996).) In addition, Local 745 initiated suit in Federal District Court in Texas in an attempt to enjoin the IBT from imposing the trusteeship on Local 745. *Id.* at 8.

Plaintiff IBT alleges that defendants' actions violated the IBT Constitution, the Consent Decree, Section 301(a) of the LMRA, and Sections 302 and 304 of the LMRDA. *Id.* at 14. In order to stop defendant from violating the IBT Constitution, the Consent Decree, and federal labor law, to prevent defendant from further obstructing the actions of the IBT and its Trustee, and to enjoin defendant from commencing or pursuing any legal action that challenges or impedes the IBT's imposition of a trusteeship on Local 745, other than defense of the litigation currently pending before this Court, plaintiffs sought a Temporary Restraining Order and Order to Show Cause from this

Court on August 21, 1996. (TRO at 2–4.) After conferring with this Court, Judge Chin, who was sitting in Part I, signed plaintiff's Temporary Restraining Order and Order To Show Cause that same day. *Id.* at 4. The Order To Show Cause ordered the IBT, Local 745, the office of the United States Attorney for the Southern District of New York, and the IRB to appear the next day, August 22, 1996, to present oral argument on the question of whether this Court should grant plaintiff IBT's request for a preliminary injunction enjoining defendants from violating the IBT Constitution and the Consent Decree, obstructing the actions of the IBT and its trustee, and from commencing or pursuing any legal action that challenges or impedes the IBT's imposition of a trusteeship on Local 745, other than defense of the litigation currently pending before this Court. *Id.* at 2.

At oral argument, this Court heard from all four parties. This Court asked each party to address four specific issues: (1) whether this Court has jurisdiction and venue over the instant litigation; (2) the applicability of the All Writs Act to the instant dispute; (3) the standard for issuing a preliminary injunction to enforce an emergency trusteeship under relevant Second Circuit case law, the LMRA, and the LMRDA; and (4) the propriety of the General President's imposition of the emergency trusteeship on Local 745. (Hearing Transcript, *International Bhd. of Teamsters v. Local Union 745*, 96 Civ. 6328 ("Tr."), at 5–6 (Aug. 22, 1996).) This Court also heard from Local 745 and the IBT regarding the appropriate amount of security that plaintiff IBT should give in the event this Court granted plaintiffs' request for a preliminary injunction. *Id.* at 41–45.

Following a brief recess, this Court ruled from the bench, granting plaintiff's motion for a preliminary injunction. *Id.* at 45. This Court then ordered that:

> Local Union 745 of the International Brotherhood of Teamsters, its officers, employees, agents, attorneys, or other representatives are enjoined from:
>
> 1. Refusing to deliver all property, funds, books, records, and assets of any

kind in their possession to James Buck as Trustee of Local 745 or his designee;

> 2. Representing themselves as the authorized officers and/or representatives of Local 745, unless authorized by the Trustee or his designee;
>
> 3. Interfering in any manner with the conduct of the emergency trusteeship by the Trustee or his designee;
>
> 4. Refusing to provide a complete accounting of the financial condition of Local 745 and its funds to the Trustee James Buck or his designee, and refusing to provide any and all financial records and explanation for all receipts, disbursements, and financial transactions of any kind by Local 745 or related to Local 745;
>
> 5. Destroying, removing, secreting, or altering the financial records of Local 745 or any financial records relating to Local 745; and
>
> 6. Commencing or pursuing any legal action, other than defense of the instant action before this Court, that challenges, impedes, seeks review of or relief from, or seeks to dissolve, prevent, or delay, any act of the IBT or James Buck or his designee with respect to the trusteeship imposed on Local 745.

*Id.* at 45–47. In accordance with Rule 65(c), this Court further ordered that the IBT post security in the amount of $50,000. *Id.* at 47.

## DISCUSSION

In granting plaintiffs' motion for a preliminary injunction pursuant to Rule 65, this Court considered four issues: (1) whether jurisdiction and venue over the instant litigation were proper in this Court; (2) the applicability of the All Writs Act to the instant dispute; (3) the standard for issuing a preliminary injunction to enforce an emergency trusteeship under relevant Second Circuit case law, the LMRA, and the LMRDA; and (4) the propriety of the General President's imposition of the emergency trusteeship on Local 745. For the following reasons, this Court found that: (1) this Court had jurisdiction over the instant litigation; (2) venue is proper in the Southern District of New York; (3) Carey properly imposed an emergency trusteeship on Local 745 according to the

Second Circuit's standard for issuing a preliminary injunction to enforce an emergency trusteeship on a local union; and (4) the All Writs Act demands that the parties be enjoined from commencing or pursuing any legal action, other than the instant action before this Court, that challenges, impedes, seeks review of or relief from, or seeks to dissolve, prevent, or delay, any act of the IBT or James Buck or his designee with respect to the trusteeship imposed on Local 745.

## I. Jurisdiction

█ Voluminous and well-settled case law holds that this Court retains jurisdiction over all matters arising under the Consent Decree. Order, *United States v. International Bhd. of Teamsters*, 88 Civ. 4486, ¶¶ A.1, K.16 (March 14, 1989) ("Consent Decree"); *United States v. International Bhd. of Teamsters [Darrow]*, 896 F.Supp. 1339, 1343 (S.D.N.Y. 1995). This Court finds that the instant dispute arises under the Consent Decree because: (1) plaintiff IBT's actions were taken in response to an investigation and report made by the IRB pursuant to the remedial provisions of the Consent Decree; (2) the IRB retains continuing supervisory authority over the IBT's actions pursuant to the remedial provisions of the Consent Decree and the IRB Rules; and (3) defendants' opposition to plaintiff's actions challenges Carey's authority to act in response to a report and recommendation issued by the IRB. Accordingly, this Court finds that it has jurisdiction to adjudicate the instant dispute.

As an initial matter, Paragraph G of the Consent Decree authorizes the creation of the Independent Review Board, and sets forth the basic rules for its operation. Consent Decree, ¶ G. In addition, the "Rules and Procedures for the Operation of the Independent Review Board of the International Brotherhood of Teamsters" ("the IRB Rules"), drafted pursuant to the Consent Decree and approved by this Court, contain additional rules governing the IRB's operation. *United States v. International Bhd. of Teamsters [IRB Rules Decision]*, 829 F.Supp. 602, 602, 603 (Rule A.2) (S.D.N.Y. 1993). "The IBT, all subordinate entities of the IBT, and all members of the IBT are bound by the [IRB] Rules...." *Id.* at 602.

This case arises under the Consent Decree because plaintiff's actions were taken pursuant to the remedial provisions of the Consent Decree and the IRB Rules. The IRB investigated the allegations of misconduct within Local 745 in accordance with provisions of the Consent Decree and the IRB Rules which state that "[t]he IRB shall investigate any allegations of corruption in the IBT...." *Id.* at 605 (Rule H.2); *see* Consent Decree, ¶ G(a). The IRB referred its report regarding this investigation, as well as its recommendation that Local 745 be placed in trusteeship, pursuant to procedures set forth in both the Consent Decree and the IRB Rules. *IRB Rules Decision*, 829 F.Supp. at 606 (Rules I.1, I.4); Consent Decree, ¶¶ G(d)–(e). President Carey, as the IBT entity to which the IBT referred the Local 745 matter, imposed the trusteeship on Local 745 in order to comply with the requirement that "[u]pon referral, the IBT entity to which a matter is referred shall promptly undertake whatever action is appropriate under the circumstances to resolve the referred matter, as provided by the IBT Constitution, applicable law, and [the IRB] Rules." *IRB Rules Decision*, 829 F.Supp. at 606 (Rule I.5); *see* Consent Decree, ¶ G(e). Because the actions taken by both the IRB and IBT with respect to Local 745 in this case arose from duties imposed upon the two entities by the Consent Decree and the IRB Rules, this Court finds that this case arises under the Consent Decree.

This case also arises under the Consent Decree because the IRB retains continuing supervisory authority over the actions taken by the IBT with respect to Local 745, pursuant to the Consent Decree and the IRB Rules. Both the Consent Decree and the IRB Rules clearly state that "[t]he IRB shall monitor all matters that it has referred for action," and "may also direct the Chief Investigator to ensure that the IBT entity resolves a referred matter in a lawful, responsible, and timely manner." *IRB Rules Decision*, 829 F.Supp. at 606 (Rule I.5); Consent Decree, ¶ G(f). Furthermore, in the event that the IRB "determines, in its sole judgment,

that a matter is not being or has not been pursued and decided by the IBT entity to which the matter has been referred in a lawful, responsible, and timely manner, or that the resolution proposed by the relevant IBT entity is inadequate under the circumstances," *IRB Rules Decision,* 829 F.Supp. at 606 (Rule I.7); Consent Decree, ¶ G(f), the IRB may "take whatever steps are appropriate to ensure proper implementation" of the matter, including "the authority to seek enforcement of its decision from this Court." *IRB Rules Decision,* 829 F.Supp. at 606 (Rule K.2); Consent Decree, ¶ G(j). These rules demonstrate that any challenge to actions taken by the IBT in response to disciplinary referrals from the IRB implicates the IRB's continuing supervisory authority over such referrals. Because Local 745's refusal to cooperate with the IBT in this matter threatens the IBT's ability to comply with the IRB's referral regarding Local 745, this Court finds this case arises under the Consent Decree.

Finally, this case arises under the Consent Decree because Local 745's opposition to the IBT's actions in this case challenge actions that the IBT took pursuant to the Consent Decree. To reiterate, Local 745 contends that the IBT's imposition of a trusteeship over Local 745 violates the IBT Constitution. (Local 745 Memo at 12–15.) This claim, even if true, challenges the IRB's mandate to "monitor all matters that it has referred for action," and to "direct the Chief Investigator to ensure that the IBT entity resolves the referred matter in a lawful, responsible, and timely manner." *IRB Rules,* 829 F.Supp. at 605 (Rule I.5); Consent Decree, ¶ G(f). Any action that challenges the ability of the IRB to perform the duties imposed upon it by the Consent Decree clearly implicates the Consent Decree. Accordingly, this Court finds that Local 745's challenge to the IBT's decision to impose a trusteeship over Local 745 arises under the Consent Decree.

## II. *Venue*

■ This Court finds that venue in the instant case properly lies in the Southern District of New York. The All Writs Act, 28 U.S.C. § 1651, "empowers courts to issue extraordinary writs 'as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued.'" *United States v. International Bhd. of Teamsters [All Writs Act Affirmance],* 907 F.2d 277, 280 (2d Cir.1990) (quoting *United States v. New York Tel.,* 434 U.S. 159, 172, 98 S.Ct. 364, 372, 54 L.Ed.2d 376 (1977).) Both this Court and the Second Circuit repeatedly have invoked the All Writs Act to support this Court's power to order that all Consent Decree related litigation be maintained in the Southern District of New York. *Id.* at 280–81; Amended Opinion & Order, *United States v. International Bhd. of Teamsters [Local 714 Case],* 938 F.Supp. 1174, 1178 (S.D.N.Y.1996); *United States v. International Bhd. of Teamsters [Erbacci],* 911 F.Supp. 743, 748–53 (S.D.N.Y.1996); *Darrow,* 896 F.Supp. at 1343; *United States v. All Writs Act Decision,* 728 F.Supp. at 1047–48. As previously discussed, this case clearly arises under and implicates the Consent Decree. Accordingly, this Court finds that venue is proper in this Court under the All Writs Act.

■ In addition, venue is also proper in this Court under Section 301(a) of the LMRA. Section 301(a) provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in [the LMRA], or between any such labor organizations may be brought in any district court of the United States having jurisdiction of the parties...." 29 U.S.C. § 185(a). Because this dispute involves a contract within the scope of Section 301(a), and because this Court has jurisdiction over the parties, this Court is the appropriate venue to resolve this dispute.

The instant case is within the scope of Section 301(a) because the relationship between plaintiff IBT and defendant Local 745 is governed by the IBT Constitution. *International Bhd. of Teamsters v. Local Union 810,* 19 F.3d 786, 791 (2d Cir.1994). The Second Circuit has explained that "the constitution is not only a contract between IBT and its locals, it may also be characterized as a 'contract' between labor organizations representing employees in an industry affecting

commerce within the meaning of [Section 301 of the LMRA]." *Id.* The IBT Constitution authorizes the IBT General President to impose a temporary trusteeship upon a local union without conducting a prior hearing if "in the judgment of the General President, an emergency situation exists within the Local Union...." IBT Const., Art. VI, § 5(a).

Carey acted pursuant to the authority vested in him by the IBT Constitution when he placed Local 745 in trusteeship. *Id.;* (Verified Complaint at 6, 10.) Local 745's resistance to the imposition of the trusteeship undermines Carey's constitutional authority, and therefore, breaches the contract that governs the relationship between the IBT and Local 745. The instant action seeks to enjoin Local 745 from resisting the trusteeship, and to enforce the terms of the contract the governs the parties' relationship—the IBT Constitution.

■ This Court has jurisdiction over the parties to this action pursuant to the All Writs Act. According to the Second Circuit, "the All Writs Act requires no more than that the persons enjoined have the 'minimum contacts' that are constitutionally required under due process." *All Writs Act Affirmance,* 907 F.2d at 281. The Consent Decree resolved a litigation brought pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 19 U.S.C. § 1965(d), which provides for nationwide personal jurisdiction. *Erbacci,* 911 F.Supp. at 750. Because of the broad scope of jurisdiction under RICO, "[a]ll that is required is sufficient 'minimum contacts' with the United States, not this State or District." *Id.* (citations omitted). In the instant case, defendants have sufficient minimum contacts with the United States to warrant an exercise of this Court's jurisdiction because they oppose an action taken by the IBT in response to a referral and recommendation made by the IRB pursuant to its authority and powers under the Consent Decree. (Local 745 Memo at 1, 3–5); *see Erbacci,* 911 F.Supp. at 750. Thus, because this Court has jurisdiction over the parties to the instant suit, and because the IBT's attempt to enforce a trusteeship imposed upon Local 745 pursuant to the IBT Constitution constitutes a suit for

violation of a contact between labor organizations, this Court finds that venue properly lies in this Court pursuant to Section 301(a) of the LMRA.

Defendants' claim that venue is improper in this Court, pursuant to Section 304(b) of the LMRDA, 29 U.S.C. § 464(b). (Local 745 Memo at 8.) Section 304(b) of the LMRDA provides that actions challenging or seeking to enforce emergency trusteeships over labor unions must be brought "in the district in which the principal office of such labor organization is located, or ... in any district in which its duly authorized officers or agents are engaged in conducting the affairs of the trusteeship." 29 U.S.C. § 464(b). Defendants argue that under this provision, venue is proper in the instant action "only in the United States District Court of the Northern District of Texas, where Local 745's principal offices are situated and, where Local 745's officers, and the putative trustee, are domiciled." (Local 745 Memo at 8.)

This Court recognizes that Section 304(b) of the LMRDA alone does not confer venue on this Court for an action seeking to challenge or enforce the emergency trusteeship imposed upon Local 745. Nevertheless, as the above discussion and the previous decisions of both this Court and the Second Circuit make clear, venue is proper in this Court pursuant to the All Writs Act, and Section 301(a) of the LMRA. Accordingly, defendants' claim is meritless.

### III. Issuance of Preliminary Injunction

In the instant action, plaintiff IBT seeks a preliminary injunction enjoining defendants from interfering or refusing to cooperate with the IBT's imposition of trusteeship over Local 745. Because the standard for issuing a preliminary injunction to enforce a labor union trusteeship differs from the preliminary injunction standard applicable in most other cases, this Court will first review this standard before moving on to its application in the instant case.

### A. Standard for Issuing a Preliminary Injunction in Disputes Regarding Labor Union Trusteeships

"Ordinarily, a party seeking a preliminary injunction must meet the burden established

by [the] now familiar test: 1) irreparable harm should injunctive relief not be granted and 2) either likelihood of success on the merits, or sufficiently serious factual questions making a fair ground for litigation with a balance of hardships tipping in the movant's favor." *Local Union 810,* 19 F.3d at 789 (citations omitted). The Second Circuit, however, has held that the "scope of the examination by the district court is limited" in the labor trusteeship context by the statutory scheme that governs labor trusteeships. *Id.*

Section 304 of the LMRDA empowers a district court to enjoin a local union's resistance to its parent organization's imposition of trusteeship over the local's affairs. 29 U.S.C. § 464(c). Section 304(c) provides:

> In any proceeding to this section a trusteeship established by a labor organization in conformity with the procedural requirements of its constitution and bylaws and authorized or ratified after a fair hearing either before the executive board or before such other body as may be provided in accordance with its constitution or bylaws shall be presumed valid for a period of eighteen months from the date of its establishment and shall not be subject to attack during such period except upon clear and convincing proof that the trusteeship was not established or maintained in good faith for a purpose allowable under section 302 [29 U.S.C. § 462].

■ According to the Second Circuit, "the scope of the examination by the district court is limited [under § 464] to whether the parent union showed a likelihood of success on the merits of its claim of right to impose the trusteeship and whether it would suffer irreparable harm should the preliminary injunction permitting a trusteeship not be granted." *Local 810,* 19 F.3d at 790–91; *see National Ass'n of Letter Carriers v. Sombrotto,* 449 F.2d 915, 923 (2d Cir.1971). Moreover,

> [o]nce the parent organization demonstrates the likelihood of success on the merits of its claim of right to impose the trusteeship, the burden shifts to the local to show either that the trusteeship was not imposed in accordance with the procedural

requirements of the union constitution or that the parent organization acted without good faith or for a statutorily unauthorized purpose.

*Id.* at 790 (internal citations omitted); *see Sombrotto,* 449 F.2d at 923. This statutory presumption of validity arises even where a temporary trusteeship is imposed prior to a union hearing, so long as the union constitution provides for such a procedure. *Local 810,* 19 F.3d at 791.

### B. Propriety of Issuing a Preliminary Injunction in the Instant Case

In order for the IBT to obtain a preliminary injunction from this Court, it must show: (1) likelihood of success on the merits of its claim of right to impose a trusteeship on Local 745; and (2) irreparable injury to the union if the trusteeship is not imposed. Once the IBT has satisfied this requirement, the burden shifts to Local 745 to show that the trusteeship was imposed: (1) in a manner that contravenes the procedural requirements of the IBT Constitution; (2) in bad faith; or (3) for a statutorily unauthorized purpose.

■ Because the IBT sought to impose a trusteeship on Local 745 without holding a prior union hearing, the IBT had the burden of demonstrating that the purpose for imposing the temporary trusteeship was authorized by the IBT Constitution, and that the trusteeship should be imposed without a prior union hearing. *Id.* at 792. Article VI, Section 5(a) of the IBT Constitution authorizes the IBT General President to impose a temporary trusteeship over an IBT local "if the General President believes that such action is necessary for the purposes of correcting corruption or financial malpractice [or] restoring democratic procedures." IBT Const., Art. VI, § 5(a). Moreover, a temporary trusteeship may be imposed without a hearing where "in the judgment of the General President, an emergency situation exists within the Local Union." *Id.*

Although the IBT Constitution does not define "emergency," the Second Circuit has explained that it means "an unforeseen combination of circumstances or the resulting state that calls for immediate action." *Local*

*810,* 19 F.3d at 793 (quoting Webster's Collegiate Dictionary 9th ed. 1989.) The Second Circuit further has stated that

> [i]n order to comply with the procedural mandates of its constitution, the general president must have had a good faith belief that a situation within the local was developing suddenly and unexpectedly or through an unforeseen combination of circumstances; that the situation was one implicating corruption, financial malpractice or undemocratic procedures; and that the circumstances demanded immediate action.

*Id.* The papers submitted to this Court by the IBT demonstrate a basis for Carey to believe in good faith that an emergency existed requiring immediate imposition of a temporary trusteeship on Local 745.

In the IRB Report and its accompanying exhibits, the IRB details fresh allegations and evidence of corruption, financial malpractice, and undemocratic procedures within Local 745. (IRB Report); (Independent Review Board, Exhibits to Local 745 Trusteeship Report, ("IRB Exhibits") Vols. I–IV (Aug. 5, 1996).) For instance, the IRB Report details serious financial corruption by the Local 745 Executive Board, such as the issuance of interest-free loans to Local 745 officers in contravention of a criminal provision of the LMRDA, 29 U.S.C. § 503(a). (IRB Report at 1, 4–12). Between January and August 1996, alone, these loans totalled over $83,000. *Id.* at 7. The IRB included exhibits such as affidavits, transcripts of sworn examinations of witnesses, and pay authorization forms that support this charge. *See, e.g.,* (IRB Exhibits. Vol. I, Exs. 1–23.)

The IRB Report further explains additional financial misconduct by Local officers and agents in the form of a scheme to enrich themselves and their friends at the expense of Local 745 members by trading-in and reselling Lincoln Town Cars. (IRB Report at 1, 41–47). Again the IRB Exhibits contain evidence supporting this charge. *See, e.g.,* (IRB Exhibits. Vol. I, Exs. 1–2, Vol. IV., Exs. 102–10.) In addition, the IRB Report and Exhibits allege that nepotism and favoritism permeated the Local's referral of members to lucrative jobs, (IRB Report at 1, 12–34);

(IRB Exhibits Vol. I, Exs. 1–2, Vol. II, Exs. 40–49, Vol. III, Exs. 52, 64–70), and that Local 745 officers had serious conflicts of interest regarding their obligations to the membership through private business dealings with Local 745 employers. (IRB Report at 37–41); (IRB Exhibits Vol. I, Ex. 2, Vol. II., Exs. 40–41, Vol. III., Exs. 65, 74–75.) This Court finds that the IRB Report and Exhibits provided Carey more than sufficient reason to believe that severe misconduct existed within the Local.

Local 745 contends that these allegations refer to "practices existing for many decades [and] traditions long-standing" at the Local. (Tr. at 33.) Local 745 maintains that such "traditions" "do[ ] not constitute a situation developing suddenly or unexpectedly...." *Id.* The Local further states that the IRB Report "indicates that the most recent events occurring or matters referred to in the report occurred in early 1996," *id.* at 33–34, and appears to claim that such events, because of their age, could not reasonably be interpreted by Carey as constituting a "state that calls for immediate action." *Local 810,* 19 F.3d at 793.

This Court finds Local 745's euphemistic characterization of the corruption that allegedly permeates its union disingenuous. By claiming that misconduct deserves no immediate response because it constitutes a "long-standing tradition" of the Local or because it occurred in "early 1996," Local 745 fails to comprehend that a continuous pattern of wrongdoing of the age and scope of that allegedly running through Local 745 could, indeed, constitute a state of affairs that calls for immediate action. Given the sad history of corruption among IBT locals, this Court suspects that immediate action such as that taken by Carey in the instant case may be the only action capable of breaking a pattern of corruption as ancient and complex as that allegedly running through Local 745. Moreover, the logic underlying Local 745's argument flies in the face of the Consent Decree and its goal of eradicating the forces of corruption within the IBT so that the Union may "be maintained democratically and with integrity for the sole benefit of its members...." Consent Decree, at 2.

Given that the IBT's moving papers and supporting documents in this case demonstrate that Carey had a basis to believe in good faith that a situation existed within Local 745 that required the immediate imposition of a temporary trusteeship over the Local, this Court "did not need to undertake a full evidentiary hearing as to whether an emergency in fact existed, as IBT's claim of right under Article VI § 5(a) of the constitution became operative upon the General President's good faith belief that such a situation existed." *Local 810,* 19 F.3d at 793. As the IBT correctly argued at the August 22, 1996, hearing, to have done otherwise would have been "to put the cart before the horse," (Tr. at 14), and ignore both the terms and the purpose of LMRDA Section 304(c).

■ Turning to the second burden that the IBT must satisfy in the instant case, this Court finds that the IRB has demonstrated that it will suffer irreparable injury if defendants are not enjoined in the instant case. At the August 22, 1996 hearing, the IBT asserted that "it would suffer irreparable harm were the temporary trusteeship not imposed upon its local because such allegations of financial malpractice and undemocratic procedures severely test the allegiance of union members to their chosen leaders. This is a particularly serious matter in light of the union's history of corruption and its current efforts to establish confidence." (Tr. 22.) Both the Second Circuit and other federal courts have found that harm to a union's reputation constitutes irreparable injury. *Local 810,* 19 F.3d at 794, *International Bhd. of Teamsters v. Local Union 705,* 827 F.Supp. 513, 516 (N.D.Ill.), *appeal dismissed,* No. 93–2789 (7th Cir1993). In light of this Court's persistent efforts to enforce the Consent Decree and its goal of eradicating corruption within the IBT, this Court finds that such harm constitutes irreparable injury in the instant case, and thus, that the IBT has satisfied its burden.

■ Because the IBT met its burdens under the *Local 810* test, the validity of the IBT's action is presumed under Section 304 of the LMRDA. *Local 810,* 19 F.3d at 794. To rebut this presumption, Local 745 must demonstrate by clear and convincing evidence that Carey: (1) did not impose the trusteeship on Local 745 in accordance with the procedural requirements of the IBT Constitution; (2) that he reached his determination that an emergency existed in Local 745 in bad faith; or (3) that the purpose for which Carey placed the temporary trusteeship over Local 745 was not authorized by Section 302 the LMRDA. *Id.*

As previously discussed, this Court finds that Carey acted in accordance with the procedural requirements set forth in the IBT Constitution for placing an IBT local in trusteeship. Accordingly, this Court finds no procedural impropriety that would support Local 745's resistance to the IBT's imposition of the trusteeship over its affairs.

As for bad faith, Local 745 had opportunity to demonstrate that Carey acted in bad faith in imposing the trusteeship on Local 745 during this Court's August 22, 1996 hearing. As the Second Circuit suggested in *Local 810,* Local 745

> could have proven that [Carey acted in bad faith] by showing that Carey acted contrary to the union's best interests, acted in his own self-interest, or that his actions were so outrageous or unconscionable that even if they were in the best interests of the union, they would constitute bad faith. Carey's actions, according to the definition of bad faith found in the leading law dictionary, would need to be prompted not by some honest mistake as to his duty as general president, "but by some interested or sinister motive."

*Id.* (internal citations omitted). This Court's careful review of the hearing transcripts and defendants' papers fails to reveal a single allegation, conclusory or otherwise, that Carey acted in bad faith.

Similarly, the hearing transcript is devoid of any claim that the purpose for which Carey imposed the trusteeship on Local 745 is not authorized by the provisions of the LMRDA. Moreover, this Court's own inquiry reveals that the purpose for which the IBT imposed the trusteeship over Local 745 is a purpose statutorily authorized by the LMRDA. Section 304(c) of the LMRDA requires that a trusteeship created pursuant to

its authority be "established or maintained in good faith for a purpose allowable under section 302 [29 U.S.C. § 462]." 29 U.S.C. § 464(c). Under 29 U.S.C. § 462, such trusteeships shall be established "for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements and other duties of a bargaining representative, restoring democratic procedures, or otherwise carrying out the legitimate objects of such labor organization." 29 U.S.C. § 462. As previously discussed, Carey placed Local 745 in trusteeship at the recommendation of the IRB in order to stop the financial corruption, self-dealing, and undemocratic work referrals allegedly perpetrated by Local 745 officers at the expense of rank-and-file Local members. (Verified Complaint at 10–12); (IRB Report at 1–2.) Because Carey's stated reasons for placing Local 745 in trusteeship are identical to those contained in Section 302 of the LMRDA, 29 U.S.C. § 462, this Court finds that Section 302 cannot support Local 745's resistance to the IBT's imposition of the trusteeship over its affairs. Accordingly, this Court finds that Local 745 has failed to rebut the presumption of validity of the IBT's imposition of trusteeship over Local 745 by clear and convincing evidence.

*IV. The All Writs Act*

■ As previously discussed, following Trustee James Buck's attempt to commence the trusteeship over the affairs of Local 745, defendants refused to recognize the trusteeship, and filed suit in federal court in the Northern District of Texas in an attempt to enjoin Buck's actions. (Verified Complaint at 13); (Local 745 Memo at 9.) At the August 22, 1996, hearing, this Court enjoined defendants from "commencing or pursuing any legal action, other than defense of the instant action before this Court, that challenges, impedes, seeks review of or relief from, or seeks to dissolve, prevent, or delay, any act of the IBT or James Buck or his designee with respect to the trusteeship imposed on Local 745." (Tr. at 45–47.)

It is well settled that this Court retains jurisdiction over all matters arising under the Consent Decree. Consent Decree,

¶¶ A.1, K.16; *Darrow,* 896 F.Supp. at 1343. In aid of this Court's jurisdiction, this Court enjoined "all local unions, joint councils, area conferences, and other entities subordinate to or affiliated with the IBT, and any members, officers, representatives, agents and employees of the IBT or any such IBT affiliated entity, from filing or taking any legal action that challenges, impedes, seeks review of or relief from, or seeks to prevent or delay any act of any of the court officers appointed by this Court pursuant to the Consent Order in this action, in any court or forum in any jurisdiction except this Court[.]" December 15, 1989, Order at 3; *see also All Writs Act Decision,* 728 F.Supp. 1032. In the All Writs Act Decision, this Court cited three reasons why such actions must be brought before this Court: (1) "there exists a significant risk of subjecting the Consent Decree to inconsistent interpretations and the Court officers to inconsistent judgments," which "would encourage forum shopping by subordinate entities seeking a sympathetic ruling," *All Writs Act Decision,* 728 F.Supp. at 1047; (2) "widespread litigation across the country would subvert the reform bogging the Court officers down in duplicative, harassing, and perhaps frivolous litigation," *id.;* and (3) "judicial economy demands that similar issues not be litigated multiple times in different districts...." *Id.* at 1048.

On appeal, the Second Circuit affirmed this Court's ruling. Quoting the Supreme Court, the Second Circuit explained that "the All Writs Act empowers courts to issue extraordinary writs 'as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued.'" *All Writs Act Affirmance,* 907 F.2d at 280 (quoting *United States v. New York Tel.,* 434 U.S. 159, 172, 98 S.Ct. 364, 372, 54 L.Ed.2d 376 (1977)). The Second Circuit held that this Court "acted well within its authority under the All Writs Act" in enjoining all members and affiliates of the IBT from litigating issues related to the Consent Decree in any court other than the Southern District of New York, and specifically accepted this Court's reasons for doing so. *Id.* at 280–81. Finally, the Second Circuit rejected appellants' claim that this Court lacked personal jurisdiction over them both because "[i]n-

junctions may be issued against non-parties under the All Writs Act," and because "the All Writs Act requires no more than that persons enjoined have the 'minimum contacts' that are constitutionally required under due process." *Id.* at 281 (quotations and citations omitted). Subsequent to the Second Circuit's All Writs Act Affirmance, this Court has issued other orders enjoining parties from pursuing suits that implicated the Consent Decree in other courts. *Local 714 Case,* 938 F.Supp. 1174 (1996); *Erbacci,* 911 F.Supp. 743 (S.D.N.Y.1996); *Darrow,* 896 F.Supp. 1339.

In the instant case, plaintiff IBT imposed an emergency trusteeship on Local 745 pursuant to a recommendation of the IRB, pursuant to the rules that govern the IRB. *IRB Rules Decision,* 829 F.Supp. at 606 (Rule I.1–I.5). According to the IRB Rules, following this referral the IBT "shall promptly undertake whatever action is appropriate under the circumstances to resolve the referred matter, as provided by the IBT Constitution, applicable law, and these Rules," and "shall resolve the referred matter within the time prescribed by the IRB...." *Id.* at 605, (Rule I.5). The IRB Rules further mandate that "the IRB shall monitor all matters that it has referred for action," and "may also direct the Chief Investigator to ensure that the IBT entity resolves a referred matter in a lawful and responsible manner." *Id.*

The IRB and the IRB Rules were established with this Court's approval pursuant to specific provisions of the Consent Decree. Consent Decree, ¶ G. Consequently, any actions taken by the IRB, or by the IBT upon recommendation of the IRB, not only implicate the Consent Decree, but also are crucial to the Consent Decree's effectiveness. Accordingly, this Court finds that the actions taken by the IBT in the instant case implicate the Consent Decree.

Similarly, Local 745's challenges to the IBT's actions in the instant case implicate the Consent Decree. Local 745's contention that the IBT's imposition of trusteeship over Local 745 violates both the IBT Constitution and the LMRDA challenges the IRB's authority to "monitor all matters that it has referred for action," and to "direct the Chief

Investigator to ensure that the IBT entity resolves the referred matter in a lawful, responsible, and timely manner." *IRB Rules,* 829 F.Supp. at 605 (Rule I.5). As stated earlier in this opinion, any action that challenges the ability of the IRB to perform the duties imposed upon it by the Consent Decree clearly implicates the Consent Decree. Accordingly, this Court finds that Local 745's challenge to the IBT's decision to impose a trusteeship over Local 745 implicates the Consent Decree.

As previously explained, this Court found that its original All Writs Act Decision was necessary for three reasons. Each of these reasons compels this Court to enjoin the parties in the instant case. First, "there exists a significant risk of subjecting the Consent Decree to inconsistent interpretations and the Court Officers to inconsistent judgments," which "would encourage forum shopping by subordinate entities seeking a sympathetic ruling." *All Writs Act Decision,* 728 F.Supp. at 1047. The need for consistency in Consent Decree case law demands that all Consent Decree litigation be brought in one Court—the Southern District of New York.

Second, "widespread litigation across the country would subvert the reform bogging the Court officers down in duplicative, harassing, and perhaps frivolous litigation." *Id.* If Local 745 were permitted to proceed with its litigation in Texas, the IBT and IRB would face duplicative and prolonged litigation in a distant judicial district. Moreover, this Court is aware of recent challenges in federal district courts in Chicago and Pennsylvania to trusteeships that have been imposed by the IBT on IBT locals. The time and effort required to pursue countrywide litigation regarding the Consent Decree would hinder both the IBT and IRB's ability to perform their respective disciplinary and remedial duties under the Consent Decree.

Third, this Court's All Writs Act Decision was designed to promote judicial economy, and judicial economy is best served by enjoining the parties in the instant case. "Because this Court has overseen the Consent Decree from its inception, this Court has thorough knowledge of the myriad decisions

that make up the law of this case." *Darrow*, 896 F.Supp. at 1345. In fact, this Court recently issued an Opinion & Order regarding an almost identical dispute over the imposition of an emergency trusteeship by the IBT on an IBT Local in Chicago. *See Local 714 Case*, 938 F.Supp. 1174 (1996). Consequently, interests of judicial economy militate in favor of adjudicating all matters regarding the instant dispute in this Court.

Because this Court finds that the Local 745 Case implicates the Consent Decree, this Court holds that this Court's All Writs Act Decision requires that the instant case be adjudicated solely in this Court and that defendants should be enjoined from commencing or pursuing any legal action, other than defense of the instant action before this Court, that challenges, impedes, seeks review of or relief from, or seeks to dissolve, prevent, or delay, any act of the IBT or James Buck or his designee with respect to the trusteeship imposed on Local 745.

## CONCLUSION

IT IS HEREBY ORDERED THAT plaintiff IBT's motion for a preliminary injunction is GRANTED.

IT IS FURTHER ORDERED THAT Local Union 745 of the International Brotherhood of Teamsters, its officers, employees, agents, attorneys, or other representatives are enjoined from:

1. Refusing to deliver all property, funds, books, records, and assets of any kind in their possession to James Buck as Trustee of Local 745 or his designee;

2. Representing themselves as the authorized officers and/or representatives of Local 745, unless authorized by the Trustee or his designee;

3. Interfering in any manner with the conduct of the emergency trusteeship by the Trustee or his designee;

4. Refusing to provide a complete accounting of the financial condition of Local 745 and its funds to the Trustee James Buck or his designee, and refusing to provide any and all financial records and explanation for all receipts, disbursements, and financial

transactions of any kind by Local 745 or related to Local 745;

5. Destroying, removing, secreting, or altering the financial records of Local 745 or any financial records relating to Local 745; and

6. Commencing or pursuing any legal action, other than defense of the instant action before this Court, that challenges, impedes, seeks review of or relief from, or seeks to dissolve, prevent, or delay, any act of the IBT or James Buck or his designee with respect to the trusteeship imposed on Local 745.

IT IS FURTHER ORDERED THAT in accordance with Federal Rule of Civil Procedure 65(c), the IBT post security in the amount of $50,000.

SO ORDERED.