Kenneth CHIECO, on behalf of himself and all similarly situated Members of Local 1034, I.B.T., and James Leahy, Bruce Kapp, Richard Merola, Gloria Carotenuto, Joseph Mattiola, Joseph Chaloupka and Brian Milosky in their capacities as Officers and Executive Board Members of Local 1034, I.B.T., Plaintiffs,

v.

INTERNATIONAL BROTHERHOOD OF TEAMSTERS, Ronald Carey, in his capacity as President of the International Brotherhood of Teamsters, and Eugene Maney, in his capacity as temporary Trustee of Local 1034, I.B.T., Defendants.

No. 97 CIV. 6391(DNE).

United States District Court, S.D. New York.

Sept. 12, 1997.

K. Dean Hubbard, Jr., Eisner & Hubbard, P.C., New York City, for Plaintiffs.

Richard M. Seltzer, Cohen, Weiss and Simon, New York City, for Defendants.

## OPINION & ORDER

EDELSTEIN, District Judge.

This opinion emanates from the voluntary settlement of an action commenced by the United States of America against, *inter alia,* the International Brotherhood of Teamsters ("IBT") and the IBT's General Executive Board. The settlement is embodied in the voluntary consent order entered March 14, 1989 ("Consent Decree"). The goal of the Consent Decree is to rid the IBT of the hideous influence of organized crime through a two-phased implementation of the Consent Decree's various remedial provisions. In the first phase of the Consent Decree, these provisions provided for three court-appointed officers: the Independent Administrator to oversee the Consent Decree's provisions; the Investigations Officer to bring charges against corrupt IBT members; and the Election Officer to supervise the electoral process that led up to and including the 1991 election for IBT International Union Office. In the second phase of the Consent Decree, the IA was replaced by a three-member Independent Review Board ("IRB").

The Consent Decree, during its more than eight-year history, has generated an enormous amount of litigation that has required this Court to issue numerous opinions. In one such opinion, this Court, pursuant to its authority under the All Writs Act, 28 U.S.C. § 1651(a), enjoined "all local unions, joint councils, area conferences, and other entities subordinate to or affiliated with the IBT, and any members, officers, representatives, agents and employees of the IBT or any such IBT affiliated entity, from filing or taking any legal action that challenges, impedes, seeks review of or relief from, or seeks to prevent or delay any act of any of the court officers appointed by this Court pursuant to

the Consent Order in this action, in any court or forum in any jurisdiction except this Court[.]" December 15, 1989, Order at 3; *see also United States v. International Bhd. of Teamsters [All Writs Decision],* 728 F.Supp. 1032 (S.D.N.Y.), *modification denied,* 735 F.Supp. 502 (S.D.N.Y.), *aff'd,* 907 F.2d 277 (2d Cir.1990).

On August 28, 1997, plaintiffs, Local Union 1034 of the IBT ("Local 1034"), located in New York, New York, and its officers and Executive Board ("plaintiffs"), filed an action against defendants, IBT, Ron Carey ("Carey"), in his capacity as General President of IBT, and Eugene Maney ("Maney"), in his capacity as temporary trustee of Local 1034, challenging an emergency trusteeship imposed over Local 1034 by Carey in response to a recommendation by the IRB. See IRB Trusteeship Recommendation Concerning Local 1034 (Aug. 4, 1997) ("IRB Report"). Plaintiffs' moved this Court, pursuant to Federal Rule of Civil Procedure 65 ("Rule 65"), to issue an order to show cause and a temporary restraining order enjoining defendants from continuing the imposed emergency trusteeship and reinstating the individual plaintiffs to their positions as officers and Executive Board members of Local 1034. The request for an order to show cause was denied but a preliminary injunction hearing was scheduled for September 9, 1997. As a result, this Court heard oral argument relating to plaintiffs Rule 65 motion and reserved opinion. After reviewing the arguments advanced by each party in its respective statements to this Court and submissions, this Court finds that plaintiffs' application for a preliminary injunction is denied.

## FACTS

This is an action to enjoin the continuation of the emergency trusteeship imposed by the IBT over Local 1034 upon the recommendation of the IRB. Pursuant to its authority under the Consent Decree and the IBT Constitution, the IRB conducted an investigation of Local 1034, its officers and Executive Board. (Amended Complaint at 9.) On August 4, 1997, upon completion of its investigation, the IRB issued the IRB Report to the IBT.

The IRB Report charged that Local 1034 had engaged in a "pattern of entering into apparently sham collective bargaining agreements ("CBAs") in which owners and employers were allowed to be Local 1034 members with full rights of IBT membership." IRB Report, at 1. The IRB found that Local 1034 had 105 CBAs with only one member in the bargaining unit, 46 CBAs with two members in the bargaining unit, and 28 CBAs with three members in the bargaining unit. *Id.* The IRB also found that Local 1034 entered into CBAs with owners of companies to provide health insurance for owners who were friends and relatives of Local 1034's officers. *Id.* at 1, 10, 15–16, 17. In addition, the Report contended that the terms of these "sham" CBAs were not negotiated with any employer, and that Local 1034 created a "form contract" whose "terms were not honored and not intended to be enforced." *Id.* at 1. Furthermore, the IRB determined that Local 1034 engaged in collective bargaining agreements outside of its jurisdiction. *Id.* at 2. In conclusion, the IRB recommended the imposition of a Trusteeship over Local 1034 because Local 1034 was "not being conducted in accordance with the IBT Constitution or for the benefit of the members," *Id.* at 1, and required General President Carey ("Carey") to report to the IRB any actions taken or planned within two weeks, (Letter from John J. Cronin, Jr. to Ron Carey of 8/4/97.)

Following receipt of the IRB Report, by letter dated August 18, 1997, Carey issued a Notice to the officers and members of Local 1034 imposing an emergency trusteeship over Local 1034 effective August 20, 1997. (Amended Complaint at 11.) Pursuant to the powers vested in the General President by Article VI, Section 5 of the IBT Constitution, Carey appointed Maney to serve as temporary trustee over the affairs of Local 1034. (Amended Complaint at 12.)

In response plaintiffs brought an action claiming a violation of (1) Article VI, Section 5 of the IBT Constitution, (2) Sections 302 and 304 of the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. §§ 462 and 464, and (3) Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. Plaintiffs argue that this Court should issue a preliminary injunction pursuant to Fed.R.Civ.P. Rule 65 restraining and enjoining the continuation of the emergency trusteeship and reinstating the individual plaintiffs to their positions as officers and Executive Board members of Local 1034.

### DISCUSSION

In deciding plaintiffs' motion for a preliminary injunction pursuant to Rule 65, this Court considered two issues: (1) the standard for issuing a preliminary injunction lifting an emergency trusteeship under relevant Second Circuit case law, the LMRA, and the LMRDA; and (2) the propriety of the General President's decision to impose an emergency trusteeship on Local 1034. For the reasons set forth below, this Court finds that (1) the applicable standard for preliminary injunctive relief *lifting* an international union's imposition of a trusteeship is the same as in those cases in which a trusteeship was sought to be enforced by injunction; and (2) Carey's decision to impose an emergency trusteeship over Local 1034 was proper according to the Second Circuit's standard for issuing a preliminary injunction enforcing an emergency trusteeship on a local union.

### I. Issuance of Preliminary Injunction

Plaintiffs seek a preliminary injunction enjoining defendants from continuing the emergency trusteeship imposed on Local 1034. Because the standard for issuing a preliminary injunction to lift the imposition of a labor union trusteeship differs from the preliminary injunction standard applicable in most other cases, this Court will first review this standard before addressing its application in the instant case.

### A. Standard for Issuing a Preliminary Injunction in Disputes Regarding Labor Union Trusteeships

■ "Ordinarily, a party seeking a preliminary injunction must meet the burden established by [the] now familiar test: 1) irreparable harm should injunctive relief not be granted and 2) either likelihood of success on the merits or sufficiently serious factual questions making a fair ground for litigation

with a balance of hardships tipping in the movant's favor." *International Bhd. of Teamsters v. Local* 810, 19 F.3d 786, 789 (2d Cir.1994) (citations omitted). However, the Second Circuit has held that the "scope of the examination by the district court is limited" in the labor trusteeship context by the statutory scheme governing labor trusteeships. *Id.*

Section 304 of the LMRDA empowers a district court to enjoin a local union's resistance to its parent organization's imposition of a trusteeship over the local's affairs. 29 U.S.C. § 464(c). Section 304(c) provides:

In any proceeding to this section a trusteeship established by a labor organization in conformity with the procedural requirements of its constitution and bylaws and authorized or ratified after a fair hearing either before the executive board or before such other body as may be provided in accordance with its constitution or by laws shall be presumed valid for a period of eighteen months from the date of its establishment and shall not be subject to attack during such period except upon clear and convincing proof that the trusteeship was not established or maintained in good faith for a purpose allowable under section 302 [29 U.S.C. § 462].

■ The Second Circuit has held that "the scope of the examination by the district court is limited [under § 464] to whether the parent union showed a likelihood of success on the merits of its claim of right to impose the trusteeship and whether it would suffer irreparable harm should the preliminary injunction permitting a trusteeship not be granted." *Local 810,* 19 F.3d at 790–91; *see National Ass'n of Letter Carriers v. Sombrotto,* 449 F.2d 915, 923 (2d Cir.1971). Furthermore,

[o]nce the parent organization demonstrates the likelihood of success on the merits of its claim of right to impose the trusteeship, the burden shifts to the local to show either that the trusteeship was not imposed in accordance with the procedural requirements of the union constitution or that the parent organization acted without good faith or for a statutorily unauthorized purpose.

*Id.* at 790 (citations omitted); see *Sombrotto,* 449 F.2d at 923. Moreover, the Court noted that

where a parent labor organization's constitution allows imposition of a temporary trusteeship in the case of an emergency, and the proper procedural requirements are met, a federal court may not invalidate the trusteeship, unless the local is able to show by clear and convincing evidence that the trusteeship was not established in good faith or was for a purpose not authorized by the Reporting and Disclosure Act. If the constitution provides for such a procedure, the statutory presumption of validity arises even where a temporary trusteeship is imposed prior to a union hearing.

*Id.* at 791 (citations omitted).

## B. Propriety of Issuing a Preliminary Injunction in the Instant Case

■ Although the procedural posture of the case before this Court involves an application by a *local* union for a preliminary injunction *lifting* the imposition of an emergency trusteeship, the proper standard to be applied is the same as applied in those cases in which an emergency trusteeship was sought to be enforced by injunction. *Mason Tenders Dist. Council v. Laborers' International Union,* 884 F.Supp. 823, 831–32 (S.D.N.Y.1995) (applying *Local 810* standard in context of local union's application for a preliminary injunction enjoining the continuation of a trusteeship).

■ Therefore, plaintiffs must prove irreparable harm and a likelihood of success on the merits based upon the *Local 810* standard. Because plaintiffs' likelihood of success on the merits is the crucial inquiry in this case, this Court will address this issue first.

■ In order to prove a likelihood of success on the merits, plaintiffs must show by a preponderance of the evidence that IBT did not have a valid "claim of right" to impose the trusteeship. *Mason,* 884 F.Supp. at 832. This question hinges on whether IBT complied with the provisions of its constitution. If plaintiffs meet this initial burden, then in order to complete the required show-

ing, plaintiffs must show bad faith by a preponderance of the evidence. *Id.* In the alternative, if plaintiffs fail to make the requisite showing at the first step, a presumption of validity of IBT's actions will arise. *Id.* To defeat this presumption, plaintiffs must show bad faith or improper purpose by clear and convincing evidence. *Id.*

■ Article VI, Section 5(a) of the IBT Constitution gives the General President the authority to impose a trusteeship over a local union where the "General President believes that such action is necessary for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements, or other duties of a bargaining representative, restoring democratic procedures or preventing any action which is disruptive of, or interferes with the performance of obligations of other members or Local Unions under collective bargaining agreements, or otherwise carrying out legitimate objectives of the subordinate body[.]" IBT Const., Art. VI, § 5(a). In addition, Article VI Section 5(a) empowers the General President to impose a temporary trusteeship prior to an internal union hearing, where "in the judgment of the General President, an emergency situation exists within the Local Union[.]" *Id.*

Although the IBT Constitution does not define "emergency," the Second Circuit explained that

> [i]n order to comply with the procedural mandates of its constitution, the general president must have had a good faith belief that a situation within a local was developing suddenly and unexpectedly or through an unforeseen combination of circumstances; that the situation was one implicating corruption, financial malpractice or undemocratic procedures; and that the circumstances demanded immediate action.

*Local 810,* 19 F.3d at 793.

This Court finds that Carey had a basis to believe in good faith that it was necessary to impose an emergency trusteeship on Local 1034. The IRB Report and Exhibits clearly provided Carey with substantial reason to believe that a trusteeship was warranted at Local 1034. The IRB Report and its accompanying exhibits detail fresh allegations and

evidence of corruption. In addition, the IRB Report required Carey to report to the IRB within two weeks on "the actions planned or taken." (Letter from Cronin to Carey of 8/4/97.) The IRB could have ordered Carey to take action within a period of up to ninety days. Thus, Carey made his decision to impose an emergency trusteeship after receiving an IRB Report that details a pattern of on-going allegedly "sham" CBAs at Local 1034, recommends the imposition of a trusteeship, and requires Carey to report on actions taken within two weeks. Consequently, the IRB Report, Exhibits and accompanying letter provided Carey with a sufficient basis to believe in good faith that an emergency situation existed at Local 1034 requiring the immediate imposition of a trusteeship. *See International Bhd. of Teamsters v. Local 705,* 827 F.Supp. 513, 515 (N.D.Ill.1993) (stating that "[t]he IRB report and the IRB rules requiring prompt action furnish the basis for Carey's judgment").

Plaintiffs' argument that Carey could not have had a good faith belief that an emergency existed because, the alleged "sham" CBAs had existed at the Local for many years, including during a prior trusteeship, is without merit. Specifically, plaintiffs allege that during a prior trusteeship of Local 1034, the former International Trustee of Local 1034, Vincent C. Murphy ("Murphy"), was aware of the CBAs and that at "some time" during Murphy's trusteeship one of Chief Investigator Carberry's investigators, John Skala, ("Skala") requested the opportunity to review Local 1034's collective bargaining agreements. (Pls.' Mem. Supp. Order to Show Cause for a T.R.O. and Prelim. Inj. at 5-6.) Plaintiffs contend, that although Murphy told Skala that he could conduct an investigation at any time, no investigation was done until the conclusion of Murphy's tenure as Trustee and after the election of new officers. Therefore, plaintiffs maintain, that since such practices have existed at Local 1034 for years, they do not constitute a situation developing suddenly or unexpectedly.

However, plaintiffs' argument fails to recognize that in *International Bhd. of Teamsters v. Local 714,* 109 F.3d 846 (2d Cir.1997), the Court held that "fresh" allegations of

"ongoing" improprieties are ample support for Carey's determination that an emergency existed. *Local 714,* 109 F.3d at 850. Moreover, this Court has held that

> [b]y claiming that misconduct deserves no immediate response because it constitutes a "long-standing tradition" of the Local ... [plaintiffs fail] to comprehend that a continuous pattern of wrongdoing could, indeed, constitute a state of affairs that calls for immediate action. Given the sad history of corruption among IBT locals, this Court suspects that immediate action such as that taken by Carey in the instant case may be the only action capable of breaking a pattern of corruption. ...."

*International Bhd. of Teamsters v. Local Union 745,* 938 F.Supp. 1186, 1195 (S.D.N.Y. 1996), *aff'd,* 109 F.3d 846 (2d Cir.1997).

In addition, plaintiffs have not established that the prior international trustee, Murphy, knew all the facts surrounding the CBAs, or that such facts were passed on to Carey. Furthermore, no previous IRB investigations were made regarding the CBAs. Therefore, the IRB Report detailing the facts surrounding the "sham" CBAs constitutes a fresh allegation of on-going improprieties. Moreover, plaintiffs' argument that no emergency existed because James Leahy, former President of Local 1034, was allegedly considering effectuating changes regarding the CBAs to address IRB's concerns, as evidenced by an alleged letter by Mr. Leahy that was never mailed, is irrelevant to the issue of whether circumstances existed creating a basis for Carey's decision to impose an emergency trusteeship.

■ IBT's papers and supporting documents in this case demonstrate that Carey had a basis to believe in good faith that an emergency situation existed within Local 1034. Therefore, this Court "did not need to undertake a full evidentiary hearing as to whether an emergency in fact existed, as IBT's claim of right under Article VI § 5(a) of the constitution was triggered upon the General President's good faith belief that such a situation existed." *Local 810,* 19 F.3d at 793.

■ Because the plaintiffs have failed to show by a preponderance of the evidence that IBT had no "claim of right" to impose the trusteeship under its constitution, the validity of the IBT's actions is presumed. *Local 810,* 19 F.3d at 794. In order to rebut this presumption, Local 1034 must demonstrate by clear and convincing evidence that Carey: (1) did not impose the trusteeship on Local 1034 in accordance with the procedural requirements of the IBT Constitution; (2) that his determination that an emergency existed at Local 1034 was made in bad faith; or (3) that the purpose for which Carey placed the trusteeship over Local 1034 was not authorized by Section 302 of the LMRDA. *Id.*

As previously discussed, this Court finds that Carey acted in accordance with the procedural requirements set forth in the IBT Constitution for placing an IBT local in trusteeship; and this Court finds that Carey had a basis for believing in good faith that an emergency existed at Local 1034 justifying the imposition of a trusteeship prior to a union hearing. Plaintiffs failed to show that "Carey acted contrary to the union's best interests, acted in his own self-interest, or that his actions were so outrageous or unconscionable that even if they were in the best interests of the union, they would constitute bad faith." *Local 810,* 19 F.3d at 794. Additionally, plaintiffs have not shown that Carey's actions were unauthorized by the LMRDA. Thus, plaintiffs' have failed to show a likelihood of success on the merits.

Because this Court finds that plaintiffs have failed to show either a likelihood of success on the merits or serious factual questions making a fair ground for litigation together with a balance of hardships tipping in plaintiffs' favor, this Court need not reach a decision on Plaintiffs' claim of irreparable harm.

*CONCLUSION*

IT IS HEREBY ORDERED THAT plaintiffs motion for a preliminary injunction is DENIED.

SO ORDERED